**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NARINDER P. SINGH, AKA Narinder
Pal Singh
*Petitioner*,

v.

MATTHEW G. WHITAKER, Acting
Attorney General,
*Respondent.*

Nos. 16-70823
16-72285

Agency No.
A205-421-984

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 13, 2018
San Francisco, California

Filed January 24, 2019

Before: RAYMOND C. FISHER and MILAN D. SMITH,
JR., Circuit Judges, and ELAINE E. BUCKLO,[*] District
Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Elaine E. Bucklo, United States District Judge for the Northern District of Illinois, sitting by designation.

# SUMMARY**

## Immigration

The panel granted in part and denied in part a petition for review of the Board of Immigration Appeals' denial of asylum, humanitarian asylum, withholding of removal, and protection under the Convention Against Torture.

The panel held that the Board erred in failing to conduct a reasoned analysis with respect to petitioner's situation to determine whether, in light of the specific persons or entities that caused his past persecution, and the nature and extent of that persecution, there are one or more general or specific areas within his country of origin where he has no well-founded fear of persecution, and where it is reasonable for him to relocate pursuant to the factors set forth in 8 C.F.R. § 1208.13(b)(3).

In so concluding, the panel held that based upon its plain language, § 1208.13(b)(3) does not require the government to propose a city, state, or other type of locality as the area of relocation, rather the Department of Homeland Security may properly propose a specific *or* a more general area as the place of safe relocation. The Board must then conduct its safe relocation analysis with respect to that proposed area, however specifically or generally defined.

The panel also held that in considering the reasonableness of relocation, the Board erred in failing to

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

analyze whether petitioner would be substantially safer in a new location if he were to continue expressing his political opinion, and erred by unlawfully assuming that petitioner could silence his political activity to avoid harm.

The panel therefore granted the petition as to petitioner's asylum and withholding of removal claims, and remanded for the Board to conduct a sufficiently individualized analysis of whether petitioner could safely and reasonably relocate outside Punjab, and for reconsideration of whether he qualified for withholding from removal.

The panel denied the petition as to petitioner's humanitarian asylum and CAT claims, holding that the threats and physical harm petitioner suffered did not rise to the requisite level to warrant humanitarian asylum, and that petitioner failed to establish that it was more likely than not he would be tortured if he returned to India.

## COUNSEL

Robert B. Jobe (argued) and Morgan Russell, Law Office of Robert B. Jobe, San Francisco, California, for Petitioner.

Alexander J. Lutz (argued), Trial Attorney; Anthony C. Payne, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

M. SMITH, Circuit Judge:

Narinder Pal Singh, a citizen of India and a member of the political party Shiromani Akali Dal Amritsar (Mann Party), petitions our court to review the Board of Immigration Appeals' (BIA) decision denying his claims for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). After suffering multiple physical attacks at the hands of the Punjabi police and Congress Party members due to his participation in Mann Party events, Singh fled India. He initially entered the United States in January 2013. The Immigration Judge (IJ) denied all of Singh's claims. The BIA also denied Singh all relief sought, and then denied his motion to reconsider.

We hold that the BIA erred in failing to conduct a reasoned analysis with respect to Singh's situation to determine whether, in light of the specific persons or entities that caused his past persecution, and the nature and extent of that persecution, there are one or more general or specific areas within his country of origin where he has no well-founded fear of persecution, and where it is reasonable for him to relocate pursuant to the factors set forth in 8 C.F.R. § 1208.13(b)(3). Because the BIA did not conduct a sufficiently individualized analysis of Singh's ability to relocate within India outside of the state of Punjab, we grant the petition for review and remand the withholding of removal and asylum claims to the BIA. However, we deny review of Singh's claims for humanitarian asylum and CAT protection.

## BACKGROUND

Narinder Pal Singh is a native and citizen of India. He entered the United States on or about January 27, 2013 through the Nogales, Arizona port of entry, without possessing a valid entry document. An asylum officer later determined that Singh demonstrated a credible fear of persecution or torture. Singh applied for asylum, withholding of removal, and protection under CAT.

At a hearing before the IJ, Singh testified that he is a Sikh and a member of the Mann Party. The Mann Party advocates for Sikh rights and an independent Khalistan state. Singh attended and assisted at Mann Party rallies, and distributed leaflets.

Singh experienced several threats and suffered physical harm due to his membership in the Mann Party. He received telephonic threats in May and June of 2008, and again in October 2012. In June 2008, the police arrested Singh while he was distributing Mann Party leaflets, and beat him for six days with a leather strap. In August 2010, the police arrested Singh and detained him for ten days after protesting India's Independence Day. During Singh's detention, the police beat him with their fists and sticks, demanding that he stop supporting Khalistan and the Mann Party. Finally, in January 2012, the police arrested Singh and took him to the police station, where they beat him. In addition, Congress Party members beat Singh in April 2012, when he was returning from a Mann Party blood drive, and again in September 2012, while he was returning from a Mann Party event. After almost all of these beatings, Singh required hospital treatment, including multiple-day hospitalizations. Singh eventually fled India in November 2012.

After Singh left India, the police continued going to his house in Punjab to ask where he was. In February 2014, police and Congress Party members went to his house in Punjab and attacked his father, breaking his father's arm in the process.

Singh testified that it was not possible for him to live outside Punjab in India because, as a Mann Party member, the police would look for him and might kill him. He also noted that the police never charged him with any crimes after his several arrests.

The IJ denied all the relief sought by Singh. The IJ accorded Singh's testimony and declaration "full evidentiary weight," yet found the Department of Homeland Security (DHS) rebutted the presumption of his well-founded fear of future persecution. Specifically, the IJ considered the submitted country-conditions evidence and found that Singh could safely and reasonably relocate outside Punjab within India. The IJ noted that low-level Mann Party members not wanted by the Indian central authorities were unlikely to be targeted outside of Punjab, and that there was no evidence the Congress Party members who harmed Singh could find him outside Punjab. The IJ also found relocation reasonable given Singh's "good health and job skills" and the fact that Sikhs no longer face violence or legal obstacles when moving within India.

Further, the IJ found that the threats and physical harm inflicted upon Singh did not rise to the requisite level to warrant humanitarian asylum, and that he had not shown it was more likely than not he would be tortured if he returned to India, as required for protection under CAT.

Singh appealed the IJ's decision, which the BIA affirmed. The BIA found that the evidence supported the

IJ's determination that DHS carried its burden to show Singh could safely and reasonably relocate outside Punjab within India. The BIA also agreed with the IJ's determination that Singh was not entitled to humanitarian asylum, and his conclusion that Singh did not qualify for CAT relief.

In his motion to reconsider filed with the BIA, Singh argued that the evidence did not establish by a preponderance that he could engage in his political activities outside Punjab more safely than inside the state, and asserted that the IJ failed to identify a specific area of the country to which he could relocate as required by BIA precedent. Singh also argued that the BIA's determination that he could reasonably relocate was based on unsubstantiated assertions regarding his employment prospects. Finally, Singh contended that CAT relief was warranted based on his past torture and the current country conditions. The BIA denied the motion to reconsider, finding no legal or factual errors in its analysis and stating it need not identify a specific area of India suitable for relocation. Singh's appeals from both the denial of the motion to reconsider and the BIA's decision are now consolidated before us.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over Singh's petition pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA reviewed the IJ's factual findings for clear error, and reviewed de novo all other issues, our review is "limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006). We review the BIA's determinations of purely legal questions de novo, and factual findings for substantial evidence. *Ali v. Holder*, 637 F.3d 1025, 1028–29 (9th Cir. 2011). Under the substantial evidence standard, we uphold the agency's

determination unless "compelled to conclude to the contrary." *Id.* at 1029.

## ANALYSIS

On appeal, Singh challenges the BIA's denial of his claims for asylum, withholding of removal, humanitarian asylum, and protection under CAT, as well as its denial of his motion to reconsider. We grant the petition for review as to Singh's withholding of removal and asylum claims because while the BIA afforded Singh the presumption of a well-founded fear of persecution, it failed to conduct a sufficiently individualized analysis of his ability to relocate within India. However, we find that substantial evidence supports the BIA's conclusions regarding Singh's humanitarian asylum and CAT claims, and we deny review of those claims.

## I.  Asylum

Past persecution "triggers a rebuttable presumption of a well-founded fear of future persecution." *Garcia-Martinez v. Ashcroft*, 371 F.3d 1066, 1073 (9th Cir. 2004). When an asylum applicant has established that he suffered past persecution, the burden is on the government to show by a preponderance of the evidence that the applicant either no longer has a well-founded fear of persecution in the country of his nationality, or that he can reasonably relocate internally to an area of safety. *Afriyie v. Holder*, 613 F.3d 924, 934 (9th Cir. 2010); 8 C.F.R. § 1208.13(b)(1)(i).

Relocation analysis consists of two steps: (1) "whether an applicant could relocate safely," and (2) "whether it would be reasonable to require the applicant to do so." *Afriyie*, 613 F.3d at 934. For an applicant to be able to safely relocate internally, "there must be an area of the country

where he or she has no well-founded fear of persecution." *Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 33 (B.I.A. 2012). To determine the reasonableness of relocation, factors to consider include potential harm in the suggested relocation area, ongoing civil strife in the country, and social and cultural constraints, among others. 8 C.F.R. § 1208.13(b)(3). The factors may not all be relevant in a specific case, and they "are not necessarily determinative of whether it would be reasonable for the applicant to relocate." *Id.*

Here, the BIA afforded Singh the presumption of past persecution due to his previous beatings at the hands of the police and Congress Party members, and therefore, the burden shifted to the government to show by a preponderance of the evidence that Singh could safely and reasonably relocate internally.

## A. Safe Relocation

Singh first contends that the BIA erred in failing to identify a specific area within India to which Singh could safely relocate, as required by *Matter of M-Z-M-R-*. There, the BIA stated that where an applicant meets the refugee definition based on past persecution, "DHS must demonstrate that there is a *specific* area of the country where the risk of persecution to the respondent falls below the well-founded fear level." 26 I. & N. Dec. at 33–34 (emphasis added). The BIA ultimately remanded the case to the IJ for further fact-finding on whether the risk of persecution to the applicant in the city of Hatton, "or another proposed area," met the requisite standard. *Id.* at 34. Here, similarly, Singh argues that the BIA was too vague when it defined his safe relocation area as "outside Punjab."

We acknowledge the ambiguity within *Matter of M-Z-M-R-*, and the lack of controlling precedent on the level of specificity required of the government in identifying a proposed relocation area. In *Matter of M-Z-M-R-*, the BIA speaks of a "specific area" for relocation, yet cites a case in support of this proposition that upheld the BIA's decision in which the safe area was defined as "outside" the applicant's "very small home village." *Id.* at 33–34 (quoting *Tendean v. Gonzales*, 503 F.3d 8, 11 (1st Cir. 2007)). Previously, we have observed in a non-precedential decision that "it is sufficient to define an area of relocation generally." *Singh v. Sessions*, 743 F. App'x 729, 731 (9th Cir. 2018) (denying review where the BIA found the applicant could relocate outside Punjab, to another part of India). In numerous immigration cases however, DHS proposed specific cities or regions within the applicant's country of origin. *See, e.g.*, *Kaiser v. Ashcroft*, 390 F.3d 653, 659–60 (9th Cir. 2004) (analyzing whether petitioners could relocate safely to two cities, a geographical region, or elsewhere in Pakistan).

The immigration regulations require that the government prove relocation is possible only to "another part" of the applicant's home country or country of last habitual residence. 8 C.F.R. § 1208.13(b)(1)(i)(B), (b)(2)(ii). Based upon its plain language, the regulation does not require the government to propose a city, state, or other type of locality as the area of relocation. Accordingly, we hold that DHS may properly propose a specific *or* a more general area as the place of safe relocation. The BIA must then conduct its safe relocation analysis with respect to that proposed area, however specifically or generally defined. This holding affords DHS flexibility in determining a safe relocation area, but maintains the appropriate burden on the government to demonstrate that the proposed area is safe for the applicant. Commensurate with DHS's burden, a more generally

defined area will likely require a more comprehensive showing of proof that the entirety of the area is safe for relocation, as compared to, for example, a specific city.

Consequently, we reject Singh's argument that a greater level of specificity than "outside Punjab" was required as his proposed area of relocation.  Although general, "outside Punjab" can comply with the requirement that DHS propose "another part" of India for Singh's relocation, so long as DHS meets its other obligations in the relocation analysis, such as considering the factors set forth in  8 C.F.R. § 1208.13(b)(3).

## B.  Reasonable Relocation

Singh also argues that the BIA erred in failing to analyze whether he would be substantially safer in a new location if he were to continue expressing his support for the Khalistan secession movement, and erred by unlawfully assuming that he could silence his political activity to avoid harm.[1]  We agree, and grant the petition for review on this issue.

---

[1] The government argues that Singh has not exhausted the argument concerning his silenced political opinion, and therefore it is not properly before the court. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) ("Before a petitioner can raise an argument on appeal, the petitioner must first raise the issue before the BIA or IJ.").  However, the IJ addressed this issue, and Singh raised it in his motion for reconsideration before the BIA.  Although the BIA did not explicitly consider this argument in its denial of reconsideration, we find it is nonetheless exhausted. *See Garcia v. Lynch*, 786 F.3d 789, 792–94 (9th Cir. 2015) (holding that an issue was exhausted where the petitioner raised it before the IJ, in his pro se notice of appeal to the BIA, and in specific terms in his motion to reconsider, and the BIA addressed it on the merits in denying the motion to reconsider).

The BIA considered whether a Mann Party member would face harm from the Punjabi police outside of Punjab. The BIA also noted the existence of tenant registration systems in certain parts of India, and that there is little information-sharing across Indian states outside of criminal defendant information. The Law Library of Congress 2012 report (Law Library Report)—upon which the BIA relied—stated that the police may pursue "high-profile militants" outside of Punjab, yet acknowledged that the Punjabi police may wrongly place individuals involved in ordinary political activities on chronic offender lists. As the BIA decision notes, the Law Library Report also asserted that it is unlikely that an individual Mann Party member who "simply holds pro-Khalistani views" would be targeted.

Although the BIA discussed the Law Library Report and its conclusion that the police will likely pursue only "high-profile militants" outside of Punjab, it erred by failing to address the potential harm Congress Party members, or other local authorities, might inflict upon Singh in a new state. Instead, the BIA's analysis focused on whether the Punjabi police would follow Singh outside of Punjab, based on his past political activity, ultimately concluding that he was not sufficiently high-profile for them to do so. This analysis does not account for the persecution he may face outside Punjab from local authorities, or other actors, based on his future political activities. "[W]here the applicant has established a well-founded fear of future persecution at the hands of the government, a rebuttable presumption arises that the threat exists nationwide." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003). The BIA failed to apply that nationwide presumption to Singh's asylum claim, even though it correctly afforded him the presumption of a well-founded fear of persecution. Similarly, the BIA also failed to specifically address Singh's stated intent to

continue proselytizing for his party wherever he went. Thus, the BIA's analysis regarding whether Singh could reasonably relocate was inadequate. *See Knezevic v. Ashcroft*, 367 F.3d 1206, 1214–15 (9th Cir. 2004) (remanding to the BIA the issue of reasonableness of internal relocation due to its failure to account for several factors outlined in 8 C.F.R. § 1208.13(b)(3)).

We hold that the BIA must conduct a reasoned analysis with respect to a petitioner's individualized situation to determine whether, in light of the persons or entities that caused the past persecution, and the nature and extent of the persecution, there are one or more general or specific areas within the petitioner's country of origin where he has no well-founded fear of persecution and where it is reasonable to relocate, considering the factors set forth in 8 C.F.R. § 1208.13(b)(3). Here, in determining Singh could safely and reasonably relocate "outside Punjab," the BIA failed to conduct such an individualized analysis, and we remand this claim to the BIA to determine anew whether relocation is appropriate for Singh.**[2]**

---

**[2]** To the extent that Singh also seeks withholding of removal, we remand this issue to the BIA. To warrant withholding of removal, an applicant must show that "it is more probable than not that they will face persecution on account of a protected ground upon their deportation." *Kaiser*, 390 F.3d at 660. The BIA did not separate its analysis regarding Singh's asylum claim from whether Singh warranted withholding of removal. Because the BIA's denial of Singh's claim for withholding of removal was based on its inadequate determination that Singh could safely and reasonably relocate, we remand to the BIA to reconsider whether Singh warrants withholding of removal.

## II. Humanitarian Asylum

Regardless of whether the government has rebutted the presumption of an asylum applicant's well-founded fear of persecution, the BIA may still grant humanitarian asylum. *Matter of M-Z-M-R-*, 26 I. & N. Dec. at 31. An applicant seeking humanitarian asylum must show either "compelling reasons for being unwilling or unable to return" to his country of nationality "arising out of the severity of the [applicant's] past persecution," or "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii). The applicant bears the burden of proof to show that either form of humanitarian asylum is warranted. *Matter of L-S-*, 25 I. & N. Dec. 705, 710 (B.I.A. 2012). Humanitarian asylum based on past persecution may be granted where the petitioner has suffered "atrocious forms of persecution." *Kebede v. Ashcroft*, 366 F.3d 808, 812 (9th Cir. 2004) (quoting *Lopez-Galarza v. INS*, 99 F.3d 954, 960 (9th Cir. 1996)).

Singh asserts that the BIA's decision was too conclusory, and failed to consider all the relevant factors in determining where he qualified for humanitarian asylum under the "compelling reasons" prong. Singh did not previously raise the brevity of the IJ's or BIA's analysis, either in his appeal brief or in his motion to reconsider. Thus, the argument is unexhausted, and we lack jurisdiction to consider it.[3] *See Rojas-Garcia*, 339 F.3d at 819.

---

[3] This argument also appears meritless. We have stated, "When nothing in the record or the BIA's decision indicates a failure to consider all the evidence, a 'general statement that the agency considered all the evidence before it' may be sufficient." *Cole v. Holder*, 659 F.3d 762,

The BIA described the physical harm Singh suffered at the hands of the police and Congress Party members, and noted his multiple hospitalizations. The BIA then determined that Singh's previous persecution did not rise to the necessary level of atrociousness to warrant humanitarian asylum. We find the BIA's denial of humanitarian asylum supported by substantial evidence.

Our case law demonstrates that extremely severe persecution is required to warrant humanitarian relief. *See, e.g.*, *Lal v. INS*, 255 F.3d 998, 1009–10 (9th Cir. 2001) (finding unsupported the BIA's denial of humanitarian asylum where applicant was detained, beaten and tortured with knives and cigarettes, deprived of food and water, forced to watch sexual assault of wife, and had house and place of worship burned, among other harms). While undoubtedly troubling, Singh's past persecution does not rise to the level of severity in some other cases in which we have denied petitions for review where the BIA has declined to extend humanitarian asylum. *See, e.g.*, *Hanna v. Keisler*, 506 F.3d 933, 936–37, 939 (9th Cir. 2007) (past persecution insufficient where applicant was arrested, detained, and tortured for over a month, jailed and beaten for fifteen days, and threatened if he did not join a paramilitary organization). In cases similar to Singh's, we have consistently denied review. *See Marcu v. INS*, 147 F.3d 1078, 1080, 1083 (9th Cir. 1998) (holding BIA did not abuse its discretion in denying applicant humanitarian asylum where police had

---

771 (9th Cir. 2011) (quoting *Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006)). The BIA's decision records the Singh family's past persecution at the outset, and notes that the "several threats and physical abuse" Singh suffered did not rise to the requisite level of harm. There is no evidence that the BIA "misstat[ed] the record" or "fail[ed] to mention highly probative or potentially dispositive evidence." *Id.*

detained and beaten applicant on several occasions, threatened to kill him, and gone to his house looking for him after he left the country). Accordingly, we deny the petition for review of this claim.

## III.    Convention Against Torture

To obtain CAT relief, "a petitioner must show that torture would be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Afriyie*, 613 F.3d at 937 (quoting 8 C.F.R. § 208.18(a)(1)). The petitioner must show that he "more likely than not" will be tortured if he returns home. *Id.* Torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind.

8 C.F.R. § 1208.18(a)(1). Relevant considerations for a CAT claim include evidence of past torture inflicted upon the applicant, evidence of safe internal relocation, evidence of mass violations of human rights within the country of removal, and other pertinent country conditions. *Nuru v. Gonzales*, 404 F.3d 1207, 1217 (9th Cir. 2005) (quoting 8 C.F.R. § 1208.16(c)(3)). Evidence that the applicant "could relocate to a part of the country of removal where he or she is not likely to be tortured" is also a relevant

consideration. *Kamalthas v. INS*, 251 F.3d 1279, 1282 (9th Cir. 2001).

Although the BIA's denial of Singh's CAT claim relied in part on its determination that he could relocate, and we remand to the BIA for reconsideration of the latter determination in connection with his asylum and withholding of removal claims, we see no reason to do the same for his CAT claim. Singh points to the BIA's "flawed" relocation analysis, but the BIA's insufficient analysis of that issue does not establish that Singh carried his burden for his CAT claim. *See Ahmed v. Keisler*, 504 F.3d 1183, 1199, 1201 (9th Cir. 2007) (reversing IJ's denial of asylum claim but finding substantial evidence supported denial of CAT relief). The ability to relocate is but one factor in the CAT analysis. To prevail on his CAT claim, Singh would need to prove that he "more likely than not" would be tortured if he returned home; the BIA did not need to *dis*prove this contention.

Singh argues that his political activity would result in his being tortured, noting that it has led to his torture in the past, and that there is widespread torture of activists by the Indian police.[4] We conclude, however, that there is substantial evidence supporting the denial of CAT protection. While Singh highlights general evidence that police across India are engaged in human rights violations, the evidence specific to Mann Party members is sparse. Notwithstanding Singh's

---

[4] Singh hinges much of his argument on the fact that it would not make sense for a pro-secession activist such as himself to relocate outside of Punjab. However, Singh did not previously raise the issue of whether it was illogical for him to live elsewhere, and therefore it is not exhausted. Accordingly, we consider only whether there is substantial evidence that Singh would more likely than not be tortured, or if instead we are "compelled to conclude to the contrary." *Ali*, 637 F.3d at 1029.

personal experiences, the evidence in the record suggests Mann Party members are targeted primarily when they are high-profile militants. Despite Singh's documentary evidence regarding human rights concerns in India, we are not compelled to conclude that Singh more likely than not would be the subject of torture should he return to India. That Singh suffered persecution in the past does not necessarily mean he will be tortured in the future. *See Ahmed*, 504 F.3d at 1201 (finding substantial evidence supported denial of CAT relief where petitioner had been beaten four times by the police but otherwise did not demonstrate he would be tortured upon return to Bangladesh, because it was not clear that past persecution rose to the level of torture). Therefore, we deny the petition for review on Singh's CAT claim.

## CONCLUSION

We grant the petition for review of Singh's asylum and withholding of removal claims, and remand for the BIA to conduct a sufficiently individualized analysis of whether Singh could safely and reasonably relocate outside Punjab, and for reconsideration of whether he qualified for withholding from removal. We deny the petition for Singh's humanitarian asylum and CAT claims.

Each party shall bear its own costs on appeal.

**PETITION GRANTED AND REMANDED IN PART, DENIED IN PART.**