NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 25 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANACLETA JERONIMO-SALES, ET AL, | No. 18-73329 |
| Petitioners, | Agency Nos. A208-117-973, A208-117-974, A208-117-975, A208-117-976 |
| v. | |
| ROBERT M. WILKINSON, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 8, 2021[**]
Pasadena, California

Before: TALLMAN, CALLAHAN, and LEE, Circuit Judges.

Anacleta Jeronimo-Sales and her three minor children petition for review of

an order of the Board of Immigration Appeals (BIA) affirming the immigration

judge's (IJ) denial of asylum, withholding of removal, and protection under the

Convention Against Torture (CAT). Jeronimo-Sales and her two older children are

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

natives and citizens of Guatemala; her third child is a native and citizen of Mexico. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

1.    We review agency denials of asylum, withholding of removal, and CAT relief for substantial evidence. *Yali Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017) (citation omitted). Under that standard, the court must "uphold the agency's determination unless compelled to conclude to the contrary." *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019) (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Go v. Holder*, 640 F.3d 1047, 1054 (9th Cir. 2011) (citation omitted).

2.    Substantial evidence supports the BIA's denial of the claims for asylum, withholding of removal, and humanitarian asylum. In order for Jeronimo-Sales to succeed on those claims, she must demonstrate that a nexus exists between her feared persecution and her membership in a particular social group. *Reyes v. Lynch*, 842 F.3d 1125, 1132 n.3 (9th Cir. 2016) (asylum and withholding of removal); *Belishta v. Ashcroft*, 378 F.3d 1078, 1080 (9th Cir. 2004) (humanitarian asylum). Here, Jeronimo-Sales identifies three protected grounds that allegedly motivated the gang violence against her: (1) her membership in a class of people who took concrete steps to resist gang recruitment, (2) her gender as a woman, and (3) her family membership.

The record does not compel the conclusion that Jeronimo-Sales was targeted by the Mara 18 gang because of her resistance to gang recruitment. Jeronimo-Sales testified she encountered the Mara 18 on two instances: first in 2008 and again in 2013. According to Jeronimo-Sales, gang members initially approached her in 2008 because they spotted her boyfriend and her in a field, and after the couple refused to join, the gang members "went another way." Five years later, in 2013, they were approached again, but Jeronimo-Sales did not recognize any gang members from the earlier encounter. Given the discrete and seemingly random nature of the contacts in this case, the record does not compel the conclusion that Jeronimo-Sales was specifically targeted for gang violence because of her resistance to gang recruitment. Because Jeronimo-Sales did not demonstrate a nexus between the threat of harm and her resistance to gang recruitment, there is no need to reach her alternative argument that the BIA erred in holding that "youths who take concrete steps to oppose gang membership and authority" was not a cognizable particular social group in this case.

Nor does the record compel the conclusion that Jeronimo-Sales was targeted because of her gender. On both occasions, the gang members approached both Jeronimo-Sales and her boyfriend for recruitment. It is true that she, and not her boyfriend, suffered a miscarriage after the 2013 encounter. But at the same time, the record is unfortunately silent (in part because of Jeronimo-Sales's own memory loss and her boyfriend's refusal to discuss the events) on the motivations behind the

3

gang violence. Moreover, the recruitment efforts and threats did appear to be directed at both her and her boyfriend, and on top of that, she testified that her boyfriend was attacked by gang members separately after the couple moved to Mexico. Thus, the record does not compel the conclusion that Jeronimo-Sales was subject to persecution because of her gender.

Finally, the record does not compel the conclusion that Jeronimo-Sales was targeted because of her family membership. The record shows that her two brothers have been able to remain in Guatemala without being subjected to gang violence or recruitment attempts, which undermines her assertion that the gang is specifically targeting people with her family name. Jeronimo-Sales also does not explain the connection between her uncle's acts of violence and the two encounters she had with entirely different gang members; even accepting that her uncle may have been affiliated with the Mara 18, that does not compel the conclusion that her later experiences were anything other than random, discrete acts of violence. For these reasons, we deny the petition as to the claims for asylum, withholding of removal, and humanitarian asylum.

3.      Substantial evidence also supports the BIA's denial of Jeronimo-Sales's claim for relief under the CAT. Jeronimo-Sales must establish that "it is more likely than not" that she would be tortured if removed to Guatemala. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2014) (quoting 8 C.F.R. §

4

208.16(c)(2)).  And "the torture must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Id*. (quotation omitted).  It is not enough for law enforcement to be aware of a crime; "there must be evidence that the police are unable or unwilling to oppose the crime." *Id*. at 1034.

Here, the evidence does not compel the conclusion that Jeronimo-Sales will more likely than not be tortured if she goes back to Guatemala.  The record shows that her two brothers have been able to remain in Guatemala without being subjected to gang violence.  *See Singh*, 914 F.3d at 663.  Nor does the record compel the conclusion that the Mara 18 gang members acted with acquiescence from the Guatemalan government.  There is no indication that Jeronimo-Sales ever reported either of the gang encounters to law enforcement in Guatemala.  That is certainly not dispositive, *see Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1073 (9th Cir. 2017) (en banc), but in this case, the record does not otherwise suggest that the police would have been unable or unwilling to intervene had they known about the incidents.  Indeed, the fact that the gang members threatened Jeronimo-Sales *against* going to the police undercuts the conclusion that the government would have been unable or unwilling to control the Mara 18.  Thus, we deny the petition as to the claim for CAT protection.

Finally, as part of the petition for review of the denial of CAT protection, Jeronimo-Sales argues that the BIA erred in affirming the IJ's choice to designate Mexico, instead of Guatemala, as the primary country of removal for her youngest child. But Jeronimo-Sales declined to designate any country of removal for either herself or her children. And in those circumstances, the IJ properly considered the youngest child's citizenship in designating Mexico as the primary country of removal. *See Jama v. ICE*, 543 U.S. 335, 341 (2005). Not only that, but the IJ did designate Guatemala as the alternate country of removal, concluding that "the alternate country of removal with the rest of the family to Guatemala would be what would happen."

**DENIED.**