**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

MAR 24 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BAHBUI SINGH SIDHU, | No. 19-71081 |
| Petitioner, | Agency No. A206-465-874 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 15, 2021
San Francisco, California

Before: WALLACE and M. SMITH, Circuit Judges, and LASNIK,[**] District
Judge.
Dissent by Judge WALLACE

Bahbui Singh Sidhu,[1] a citizen of India, petitions for review of the order by

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Robert S. Lasnik, United States District Judge for the
Western District of Washington, sitting by designation.

[1] Sidhu asserted in earlier proceedings that the government misspelled his first name
as "Bahbui" on the Notice to Appear. Sidhu informed Immigration Judge Silvia
Arellano at his first master calendar appearance that his first name is actually

the Board of Immigration Appeals (BIA) dismissing his appeal from a decision by an Immigration Judge (IJ) denying his claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling. We review the BIA's legal conclusions *de novo* and its factual findings for substantial evidence. *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019) (citing *Ali v. Holder*, 637 F.3d 1025, 1028–29 (9th Cir. 2011)). Where the BIA issues its own decision affirming the IJ's decision, we review the BIA's decision alone, except to the extent it incorporates portions of the IJ's decision. *Doe v. Holder*, 736 F.3d 871, 877 (9th Cir. 2013). We have jurisdiction pursuant to 8 U.S.C. § 1252.

We grant the petition for review and remand Sidhu's asylum, withholding of removal, and CAT claims to the BIA. Our analysis is informed by *Singh v. Whitaker*, which held that the BIA's analysis of a petitioner's ability to safely and reasonably relocate was inadequate because it was not "sufficiently individualized." 914 F.3d at 659. In *Singh*, the BIA afforded the petitioner the presumption of a well-founded fear of persecution, but the BIA failed to apply the presumption nationwide before conducting a relocation analysis. *Id.* at 661 ("[W]here the applicant has established a well-founded fear of future persecution at the hands of the government, a rebuttable

---

"Bahadur." At his subsequent appearance before Immigration Judge Charles Greene III, Sidhu referred to his first name as "Bahbui." Sidhu's identification documents reflect that his first name is "Bahadur."

presumption arises that the threat exists nationwide." (quoting *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003)). We found that the BIA's analysis neglected to "specifically address [the petitioner's] stated intent to continue proselytizing for his party wherever he went." *Id.*

Here, the government produced no evidence on the relocation issue despite the fact that it bore the burden of proof. Nevertheless, the BIA concluded that the IJ permissibly relied upon the evidence Sidhu provided, including his testimony. According to the BIA, the IJ "implicit[ly]" found that Chandigarh is the area in India where Sidhu could safely and reasonably relocate, and the BIA adopted the IJ's finding regarding Sidhu's ability to reside in Chandigarh for 26 months without harm.[2] Notably, the persecution Sidhu experienced before and after his time in Chandigarh occurred at the hands of the government and related to his work on behalf of the Mann Party. During the time Sidhu lived in Chandigarh, however, he was a student and did not work for the Mann Party. We conclude that the BIA failed to apply the presumption of a well-founded fear of persecution nationwide and that the BIA failed to address the safety and reasonableness of relocation if Sidhu continued his work for the Mann Party. For these reasons, we grant Sidhu's petition

---

[2] The IJ actually incorrectly calculated the amount of time Sidhu lived in Chandigarh to be three years rather than 26 months, and the BIA determined that this was harmless error.

3

to review his claims for asylum, withholding of removal, and CAT protection.[3]

**PETITION FOR REVIEW GRANTED; REMANDED.**

---

[3] In *Singh*, we upheld the BIA's denial of CAT relief because the BIA relied only "in part" on the relocation determination. 914 F.3d at 663. Here, however, we remand Sidhu's CAT claim because the IJ's denial of CAT protection, which the BIA adopted, was premised entirely on its relocation analysis.

*Sidhu v. Garland*, No. 19-71081

WALLACE, Circuit Judge, dissenting:

I respectfully dissent. The Board's determination that a petitioner can safely and reasonably relocate within their country is reviewed for substantial evidence. *Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004). I would deny the petition for review.

At Sidhu's merits hearing, he testified that in 2009, members of India's Congress Party beat Sidhu and fellow Mann Party supporters for running a water station outside of a temple in Sidhu's village of Sekha. Sidhu stated that when he and his fellow Mann Party supporters reported the incident to the local police station, the police officers beat them with batons and accused them of working for the "opposition party." Sidhu testified that in November 2009, his cousin was hanged outside of the village and that Sidhu believed Congress Party members or the police were responsible. He stated that because the police did not take action with respect to his cousin's death, Sidhu's family sent him to live in Chandigarh, approximately 150 kilometers from his village. Sidhu testified that while living in Chandigarh, he took some trade courses and lived with a cousin. When asked if he continued to work for the Mann Party in Chandigarh, Sidhu responded that he attended "a few rallies, one or two rallies," and then elaborated, "No, I did not[.] I only would go for the rallies. Because there was nothing towards the election and

1

there was . . . no need." Sidhu lived in Chandigarh for 26 months before returning to Sekha in January 2012.[1]

With respect to Sidhu's asylum application, the IJ determined that Sidhu established past persecution. However, the IJ found that, "based on the evidence of record, and the [government's] argument," the government overcame the presumption of future persecution if Sidhu were to return to India. The IJ determined that Sidhu could safely and reasonably relocate within India. Specifically, the IJ found that "based on [Sidhu's] three years in Chandigarh, . . . the respondent can safely relocate away from his village." Taking into account Sidhu's prior work for the Mann Party, the IJ found that Sidhu "lived safely in Chandigarh and was able to participate in his party's activities." The IJ stated "that [Sidhu's] own actions support the fact that he can safely relocate to some other part of India."

The Board affirmed the IJ's decision and addressed Sidhu's argument that the government "produced no evidence on this issue [of relocation] despite the fact that it bore the burden of proof." The Board recognized that at the merits hearing, the government "did not submit any documentary evidence related to relocation." However, the Board concluded that the IJ "permissibly relied upon the testimonial

---

[1] Sidhu testified that and the IJ found that Sidhu lived in Chandigarh for three years. The Board determined that Sidhu lived in Chandigarh for 26 months and held that the IJ's miscalculation was harmless error.

evidence of the respondent and other evidence produced by the respondent, such as information included in his asylum application and statement, to support his findings that the respondent could safely and reasonably relocate within India." [*Id.*] The Board acknowledged that Sidhu's political activity in Chandigarh differed in degree from that in Sekha but reasoned that Sidhu does not need to "be able to participate in exactly the same political activities that led to his past persecution, and [Sidhu] provides no authority which would support that notion."

"[W]here the applicant has established a well-founded fear of future persecution at the hands of the government, a rebuttable presumption arises that the threat exists nationwide and therefore that internal relocation is unreasonable." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003). The Board can rely on a petitioner's testimony and evidence in the record to overcome the presumption and find that the petitioner can safely and reasonably relocate within their country. *See Ochave v. I.N.S.*, 254 F.3d 859, 867 (9th Cir. 2001) (holding that where "the unrebutted evidence [was] that [petitioner] and her family not only could, but did, relocate successfully within" their country, the IJ permissibly relied on the petitioner's successful relocation as a ground for denying asylum); *see also Amilcar-Funez v. Lynch*, 623 F. App'x 395, 396 (9th Cir. 2015) ("Substantial evidence supports the BIA's determination that petitioners could internally relocate, where the evidence showed that petitioners had already successfully

3

relocated to avoid harm in Honduras for at least one year before leaving the country.").

I disagree with the majority that the Board failed to apply the presumption of a well-founded fear of persecution nationwide. Here, the Board acknowledged that the government did not submit evidence related to relocation but concluded that the IJ permissibly relied upon the evidence Sidhu provided, including his testimony. Sidhu's testimony that he lived in Chandigarh for 26 months and continued to attend rallies in support of the Mann Party without incident provides substantial evidence that he could safely and reasonably relocate within India, specifically to Chandigarh. The Board and IJ appropriately relied on Sidhu's testimony to reach the relocation finding. *See Ochave*, 254 F.3d at 867. Moreover, disturbing the Board's decision because the government did not produce additional evidence to supplement Sidhu's testimony is inconsistent with the substantial evidence standard of review our court is required to apply.

I also disagree with the majority that Board failed to address the safety and reasonableness of relocation to Chandigarh if Sidhu continued his work for the Mann Party. There are two issues with the majority's holding. First, in my view, the IJ conducted a sufficiently individualized analysis of Sidhu's ability to relocate. The majority states that when Sidhu lived in Chandigarh, "he was a student and did not work for the Mann Party." However, Sidhu testified that he continued to

4

attend Mann Party rallies while living in Chandigarh. The IJ relied on this testimony to find that Sidhu "lived safely in Chandigarh and was able to participate in his party's activities," and the Board cited Sidhu's political activity in Chandigarh in its reasoning to affirm the IJ's decision. Sidhu's testimony indicates that his prior work for the Mann Party in Sekha consisted of gathering additional supporters to attend rallies and running events such as the water station. Accordingly, I do not think that the distinction of whether Sidhu worked for the Mann Party is a meaningful one that should undermine the IJ's relocation analysis. The Board was correct in reasoning that Sidhu need not be able to participate in exactly the same political activities that led to his past persecution, and the majority cites no authority to support such a requirement.

Second, even if this were an important distinction, Sidhu's decision not to work for the Mann Party in Chandigarh was voluntary and not the result of any fear of persecution. When asked why he did not work for the Mann Party while living in Chandigarh, Sidhu testified that there was no election coming up and therefore no need. He did not cite any fear of persecution by Congress Party members or the police. The majority's faulting the Board and IJ for relying on Sidhu's experience in Chandigarh because he voluntarily chose to somewhat scale back his political activity based on the election cycle significantly undermines the

5

IJ's ability to conduct an individualized relocation analysis and does not reflect the deference that our court owes the Board and IJ.

For these reasons, I would deny the petition for review and respectfully dissent.