**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 13 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TAJINDER SINGH, | No. 18-71166 |
| Petitioner, | Agency No. A099-474-102 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 16, 2022
San Francisco, California

Before: W. FLETCHER, GOULD, and COLLINS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge COLLINS.

Tajinder Singh ("Petitioner") appeals the Board of Immigration Appeal's

("BIA") denial of his request for asylum, withholding of removal, and protection

under the Convention Against Torture ("CAT"). Because the parties are familiar

with the facts and procedural history of the case, we do not recite them here except

as necessary to explain our decision.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

"Where, as here, the BIA adopts and affirms the IJ's order pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), and expresses no disagreement with the IJ's decision, we review the IJ's order as if it were the BIA's." *Chuen Piu Kwong v. Holder*, 671 F.3d 872, 876 (9th Cir. 2011). The BIA's findings of fact are reviewed for substantial evidence. *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992).

When determining whether a petitioner can reasonably relocate within his country of origin, "the BIA must conduct a reasoned analysis with respect to a petitioner's individualized situation to determine whether, in light of . . . the past persecution . . . there are one or more general or specific areas within the petitioner's country of origin where he has no well-founded fear of persecution and" could reasonably relocate. *Singh v. Whitaker*, 914 F.3d 654, 661 (9th Cir. 2019). The BIA must determine whether a petitioner would be persecuted "based on his future political advocacy" and, when the petitioner has established a well-founded fear of future persecution by the government, apply a rebuttable presumption of future persecution nationwide. *Id.*

1. Here, Petitioner—who was deemed credible—testified that despite his past persecution, he planned to continue his activism on behalf of the Mann Party. The BIA did not analyze where within India Petitioner could safely and reasonably relocate if he continued his activism on behalf of the Mann Party. The BIA did not

2

conduct the type of individualized inquiry required by *Singh v. Whitaker* as to whether the Petitioner would be substantially safer in a new location in India, using the required two-step analysis of (1) whether he could relocate safely and (2) whether it would be reasonable to require the Petitioner to do so. *See id.* We grant the petition with respect to asylum and withholding of removal, and remand to the BIA to reconsider these issues in light of *Singh v. Whitaker*.

The dissent contends that we misapply *Singh v. Whitaker* because that decision "expressly" rejected the "argument that a greater level of specificity than 'outside Punjab' was required as his proposed area of relocation." Dissent at 3. This argument misreads our memorandum disposition. We do not require the BIA necessarily to identify a location with greater specificity than "outside Punjab"; but it is necessary that the BIA identify a location within India to which the Petitioner could safely and reasonably relocate taking into account his testimony that he will continue his activism on behalf of the Mann Party. The BIA failed to assess the potential danger to the Petitioner of continuing his political activities on behalf of the Mann Party in some part of India outside of Punjab. *Singh v. Whitaker* remanded to the BIA to determine if the petitioner could *safely and reasonably* relocate. *Singh v. Whitaker* held that the BIA must determine whether "there are one or more general or specific areas within the petitioner's country of origin where" he could relocate, and "[h]ere, in determining [the petitioner] could safely

3

and reasonably relocate 'outside Punjab,' the BIA failed to conduct [the required] individualized analysis." *Id.* at 661. Our holding is consistent with this precedent. The dissent downplays the Petitioner's avowed conviction to continue to advocate on behalf of the Mann Party. As noted in *Singh v. Whitaker*, such "analysis does not account for the persecution [the Petitioner] may face outside Punjab from local authorities, *or other actors, based on his future political activities*" and "fail[s] to specifically address [the Petitioner's] stated intent to continue proselytizing for his party wherever he went." *Id.* (emphasis added). Because the BIA in its decision under review by us did not have the benefit of our precedent in *Singh v. Whitaker*, which was decided after the BIA's decision, we conclude that it is appropriate to remand to the BIA for its assessment in the first instance of the issues herein.

2. To qualify for protection under the CAT, a petitioner must show that "it is more likely than not that he or she would be tortured if removed." 8 C.F.R. § 208.16(c)(2); *see also Pirir-Boc v. Holder*, 750 F.3d 1077, 1085 (9th Cir. 2014). Substantial evidence supports the BIA's determination that Petitioner failed to establish a clear probability of future torture. The BIA denied Petitioner protection under the CAT not just because Petitioner could relocate within India, but also because "the evidence does not indicate that India suffers from 'gross, flagrant, or mass violations' of human rights, as is relevant to the CAT analysis." *See Singh v. Whitaker*, 914 F.3d at 663 ("The ability to relocate is but one factor in the CAT

4

analysis.").  The BIA's analysis is supported by evidence in the record.  Further,

Petitioner's conclusory recitation of a claim for protection under the CAT—

consisting of one paragraph of argument—does not compel a different conclusion.

Each party shall bear its own costs on appeal.

**GRANTED AND REMANDED IN PART ON AN OPEN RECORD, DENIED IN PART.**

*Singh v. Garland*, 18-71166

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I agree that substantial evidence supports the BIA's determination that Petitioner failed to establish his entitlement to relief under the Convention Against Torture, and I therefore concur in section 2 of the memorandum disposition. But I disagree with the majority's conclusion that this matter should be remanded in light of *Singh v. Whitaker*, 914 F.3d 654 (9th Cir. 2019), and I therefore dissent from the remainder of the memorandum.

Our decision in *Singh* recognized that, in cases where an alien has established past persecution, relocation to another part of the country may not avoid future harm if either (1) the persecutors in the first region may "pursue" the alien into other regions; or (2) the alien may face persecution from the "local authorities, or other actors," in the *other* regions of the country as well. 914 F.3d at 660–61. In *Singh*, we concluded that, on the record in that case, the agency had failed to consider evidence of the second type of harm and that, as a result, "the BIA's analysis regarding whether Singh could reasonably relocate was inadequate." *Id*. at 661.

But no such remand is warranted here, for the simple reason that, unlike in *Singh*, Petitioner here has not argued—either to the agency or to us—that he fears *local-based* persecution on account of his future political activities in other regions

of India to which he might relocate. Although Petitioner stated that he would continue his political activities on behalf of the Mann Party, he did not argue to the IJ that he fears *local* persecution based on such future political activities; he did not raise any such argument in his appellate papers before the BIA; and he did not mention any such argument in his brief in this court. Rather, Petitioner's argument before the BIA was that he faced the first type of harm noted in *Singh*—*i.e.*, that, were Petitioner to relocate to other areas of India, *the persons who had persecuted him in the Punjab would track him down* and cause him to be persecuted in those other areas. Thus, in his brief to the BIA, Petitioner emphasized (1) the evidence that the police in the Punjab were motivated to look for him, noting that they had visited his home after he left India and his wife had to move due to the harassment; and (2) the ability of Punjabi police to locate him in other parts of India through tenant verification procedures, and through his use of his identification documents. These arguments only rely on the first type of harm, and substantial evidence supports the agency's decision that Petitioner could avoid *that* harm by relocating outside the Punjab.

In particular, as the BIA noted, the Department of Homeland Security ("DHS") presented evidence supporting the conclusion that "relocation is generally safe for Sikhs who are pursued by local law enforcement rather [than] central authorities." Moreover, contrary to what Petitioner contends, the IJ did not rely

merely on generalized statements from country conditions reports. Instead, the IJ undertook an individualized assessment, in light of all of the relevant record evidence, as to whether Petitioner faced a reasonable fear of persecution in other parts of the country, and the IJ permissibly concluded that DHS had shown that he did not.

Accordingly, to the extent that Petitioner's evidence of persecution by local authorities gave rise to a nationwide presumption of a well-founded fear of persecution—as Petitioner has argued to the BIA and to this court—DHS successfully rebutted that presumption by presenting evidence refuting the case-specific factual bases for reasonably fearing that Petitioner would be subject to persecution in other parts of the country. As the BIA put it, "the record indicates that [Petitioner's] situation is a local matter" in the Punjab and that Petitioner's "fear of being pursued throughout India is therefore speculative and not supported by the evidence of record." In addressing whether DHS had carried its burden, the agency was not required to consider alternative theories for persecution in other parts of the country that Petitioner did not argue and that lack a sufficient factual basis in the record. There is thus no sufficient basis for remanding this case for the BIA to consider, as in *Singh*, whether local authorities in other parts of the country would independently seek to persecute Petitioner based on his "avowed conviction to continue to advocate on behalf of the Mann Party." *See* Mem. Dispo. at 4.

3

The majority nonetheless insists that the BIA did not address "where within India Petitioner could safely and reasonably relocate," *see id*. at 2, and that the BIA did not "us[e] the required two-step analysis (1) whether he could relocate safely and (2) whether it would be reasonable to require the Petitioner to do so." *id*. at 3. Neither of these contentions is true. Here, the BIA stated that Petitioner could relocate within India "to an area outside of Punjab," and in *Singh*, we expressly "reject[ed] Singh's argument that a greater level of specificity than 'outside Punjab' was required as his proposed area of relocation." 914 F.3d at 660. The BIA therefore addressed, with sufficient specificity, where within India Petitioner could safely and reasonably relocate. The BIA's decision likewise squarely refutes the majority's suggestion that it did not follow the "required two-step analysis." *See* Mem. Dispo. at 3. The BIA first explained why the IJ properly concluded "that it would be safe for [Petitioner] to relocate within India," and after doing so it then explained why it further concluded that the IJ "properly weighed the relevant factors in determining that it would be reasonable for [Petitioner] to relocate within India." Given this explicit two-step analysis on the face of the BIA's decision, the majority's criticism is obviously wrong.

For the foregoing reasons, I would deny the petition in full. Accordingly, I respectfully concur in part and dissent in part.