NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 14 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GORPREET SINGH,<br><br>Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>Respondent. | No. 22-1264<br><br>Agency No.<br>A216-578-470<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 17, 2023**
San Jose, California

Before: MURGUIA, Chief Judge, and PAEZ and FRIEDLAND, Circuit Judges.

Gorpreet Singh petitions for review of the Board of Immigration Appeals'

("BIA") order affirming the denial of his application for asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT"). We grant the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

petition in part and deny in part.

We review questions of law de novo and factual findings for substantial evidence. *See Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019). "Under the substantial evidence standard, we uphold the agency's determination unless compelled to conclude to the contrary." *Id.* (citation and internal quotation marks omitted).

*1. Asylum and Withholding of Removal.* When deciding whether Singh could relocate within India, the BIA afforded Singh the presumption of future persecution. The government thus had the burden of showing that it would be both safe and reasonable for him to relocate. *See Akosung v. Barr*, 970 F.3d 1095, 1101 (9th Cir. 2020). In *Singh v. Whitaker*, we held that in determining whether the government has met that burden, the BIA is required to analyze whether an applicant would be "substantially safer in a new location if he were to continue expressing his support" for his political organization. 914 F.3d 654, 660 (9th Cir. 2019).

In *Singh*, we held that "[a]lthough the BIA discussed the Law Library Report and its conclusion that the police will likely pursue only high-profile militants outside of Punjab, it erred by failing to address the potential harm Congress Party members, or other local authorities, might inflict upon Singh in a new state." *Id.* at 661 (internal quotation marks omitted). Here, the BIA relied on similar record

evidence, including an updated version of the Law Library Report which indicated that "only Mann Party members who are considered high-profile militants or are listed on a list of chronic offenders are at risk of persecution if they relocate outside of Punjab." The BIA did not specifically address, however, what might happen to Singh at the hands of authorities in Uttar Pradesh ("the UP") if he were to engage in future political activity for the Mann Party.

The immigration judge ("IJ") addressed this more directly. The IJ noted that "the record documents are less clear about what would happen if [Singh] actively supported the Mann Party in the UP," but nonetheless concluded that, "based on what it [had] been able to glean from the record documents, that it would be sufficiently safe for [Singh] to advocate for the Mann Party in the UP." The BIA affirmed this reasoning. Under *Singh*, however, the BIA is required to do more than rely on unclear evidence to conclude that a petitioner would be "sufficiently safe" in the new location. Rather, *Singh* requires an individualized analysis of whether a petitioner would be "substantially safer." 914 F.3d at 660; *see also Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 33 (B.I.A. 2012) (the proposed location "must present circumstances that are *substantially* better than those giving rise to a well-founded fear of persecution on the basis of the original claim" (emphasis added)).

Here, the agency did not conduct an individualized analysis as to whether

Singh would be substantially safer in the UP if he were to continue advocating for the Mann Party. The BIA concluded that Singh's past political engagement as a low-level party member made him an unlikely target. But although the IJ and BIA relied on evidence in the Law Library Report to justify the reasonableness of relocation, the BIA failed to address other evidence in the same report stating that the UP is one of a few states in which police forces have cooperated with police in Punjab to target Sikhs advocating for independence.

By failing to address critical evidence and failing to analyze how such evidence might impact whether Singh would be substantially safer in the UP, the BIA's internal relocation determination is insufficient under *Singh*. We thus grant Singh's petition for review with respect to his asylum and withholding of removal claims, and remand to the BIA for further proceedings.

*2. Convention Against Torture.* To qualify for relief under CAT, Singh must establish that "it is more likely than not that [he] would be tortured if removed" to India. 8 C.F.R. § 1208.16(c)(2). The BIA concluded that Singh failed to meet this burden. This decision is supported by substantial evidence. Singh argued that "background documents" compel the conclusion that he would be tortured, but the documents he offered only provide evidence about generalized corruption and violence in India, not about a specific threat to him. Additionally, the past harm he suffered may have constituted persecution, but it does not compel a finding that it

is more likely than not that he would be tortured.  *See Ahmed v. Keisler*, 504 F.3d 1183, 1200–01 (9th Cir. 2007) (determining that, although being taken into custody and beaten on four occasions is "certainly [a] form[] of persecution, it is not clear that these actions would rise to the level of torture."). We thus deny Singh's petition for review with respect to his CAT claim.

Each party shall bear its costs on appeal.

**PETITION GRANTED IN PART; DENIED IN PART; REMANDED.**