**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BALJIT SINGH, | No. 24-815 |
| *Petitioner*, | Agency No. A208-180-861 |
| v. | |
| PAMELA BONDI, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 20, 2025[*]
Pasadena, California

Filed December 1, 2025

Before: Sandra S. Ikuta, Ryan D. Nelson, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge R. Nelson;
Concurrence by Judge VanDyke

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY**

## Immigration

The panel denied Baljit Singh's petition for review of the Board of Immigration Appeals' decision affirming the denial of asylum and related relief, concluding that substantial evidence supported the BIA's determination that Singh's alleged harm did not rise to the level of past persecution and that he could avoid future persecution by relocating within India.

The panel held that the alleged harms Singh experienced, including a warning to leave the Mann political party that was unaccompanied by physical violence, two physical assaults that necessitated only minor medical treatment, and a one-night detention, viewed individually or cumulatively, did not rise to the level of persecution. The panel rejected Singh's contention that the agency erred by ignoring factors from related precedent involving harm to Mann political party members in the Punjab, explaining that the BIA was not required to use these factors as a special rule for all Mann party Sikhs from Punjab and that there were significant material differences between Singh's case and those cases.

The panel also held that substantial evidence supported the BIA's finding that Singh could reasonably relocate to avoid future persecution, where he previously avoided persecution by relocating 35 to 40 kilometers away to live with his in-laws for six months after the first assault, and a Law Library of Congress report recognized that there did not

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

appear to be any legal obstacles for members of the Sikh faith to relocate to other areas of India, especially low-level Mann party members who, like Singh, are not hard-core militants.

Concurring, Judge VanDyke wrote separately to highlight the growing inconsistency with which this court has handled cases involving similar facts and issues. Judge VanDyke wrote that the court's derogation from the "basic principle of justice" that "like cases should be decided alike"—not to mention the fundamentals of immigration law and the especially appropriate deference to executive-branch decisions in this particular area of the law mandated by Congress—warrants a course correction.

## COUNSEL

Garish Sarin, Law Offices of Garish Sarin, Los Angeles, California, for Petitioner.

Zachary S. Hughbanks and Andrew B. Insenga, Trial Attorneys; Matthew B. George, Senior Litigation Counsel; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

R. NELSON, Circuit Judge:

Baljit Singh petitions for review of a Board of Immigration Appeals (BIA) decision affirming the denial of asylum, withholding of removal, and protection under the Convention Against Torture. Singh alleges that he suffered past persecution in India for his Sikh faith and membership in the Mann party. Because substantial evidence supports the BIA's conclusion that Singh's alleged harm did not rise to the level of past persecution and that he could avoid future persecution by relocating within India, we deny the petition.

I

A

Baljit Singh, a native citizen of Punjab, India, is a practicing Sikh and member of a political group called the Shiromani Akali Dal (Mann) party. After entering the United States, Singh applied for asylum, withholding of removal, and CAT protection. Singh said he faced danger from two political groups, the Akali Dal Badal party and the Bharatiya Janata party (BJP). Both oppose the Mann party. Singh described three incidents that he argues constitute past persecution.

First, Singh testified that he was threatened in April 2014. Several masked men confronted him after a Mann party event and warned him to leave the Mann party, "otherwise the consequences [would] be bad."

Second, Singh alleged that he was attacked in June 2014 after putting up political posters. Several men approached Singh, threatening him because he had not left the Mann

party. The men assaulted Singh with wooden batons for one to two minutes, rendering him unconscious. Singh received a hot compress, an injection, and some oral medication at the local hospital where he was treated (for three days) for swelling and some "accumulated" blood. Singh reported the assault to local police who "refused to take the report" and told him that they would "lock [him] up" if he returned to file another complaint.

After this second incident, Singh did not work for the Mann party for six months. He instead went to stay with his in-laws, who lived 35 to 40 kilometers from Singh's home. Other than an unidentified person asking his parents about him "one or two times," he had no problems during his stay with his in-laws.

Third, Singh alleged that after he returned home, he was attacked in February 2015 by six men who threatened him for not heeding prior warnings about leaving the Mann party. Again, he was assaulted with wooden batons for about two minutes. He was hospitalized for swelling on his forehead and unspecified injuries to his shoulders and knees and was treated with a hot compress and pain medication via an IV.

Singh also reported this assault to the same police station, but they rebuffed him again. The police detained Singh for one night and told him to leave the Mann party, but they did not physically harm him.

The government submitted a 2018 report from the Law Library of Congress, stating that "[t]here appear to be no legal obstacles for members of the Sikh faith to relocate to other areas of India." The report also addressed membership in the Mann party and concluded that "internal relocation is feasible" when the person is "not of interest to central authorities," and that "[o]nly hard-core militants appear to

be of interest to central Indian authorities." Simply holding Mann party views "would not make someone a high-profile militant."

B

The immigration judge (IJ) denied Singh's applications. The IJ found that Singh testified credibly but concluded that he failed to show that the three incidents rose to the level of past persecution or that he could not internally relocate. The IJ therefore denied Singh's applications and ordered him removed to India.

The Board of Immigration Appeals (BIA) affirmed and dismissed the appeal. On past persecution, the BIA agreed with the IJ that Singh's "past harm—threats and two very brief beatings by a group of BJP members requiring some medical treatment, and a single night's detention—does not rise to the level of persecution." Thus, the BIA concluded that Singh was not entitled to a rebuttable presumption of a well-founded fear of future harm.

On internal relocation, the BIA concurred with the IJ's assessment that Singh could reasonably relocate within India to avoid future persecution. The BIA noted, among other things, that Singh successfully relocated to live with his in-laws without being pursued; that the Law Library of Congress report flagged "no obstacles" to relocation for Mann party members; that there is no evidence low-level Mann party members are singled out for mistreatment; and that it was unlikely the BJP would have the means to track Singh throughout India. The BIA concluded that internal relocation was reasonable.

The BIA also affirmed the IJ's denial of CAT protection, concluding that Singh failed to meaningfully challenge the IJ's findings.[1]  This petition followed.

## II

Where, as here, "the BIA conducts its own review of the evidence and law, rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020) (cleaned up).

We review the BIA's findings on both past persecution and internal relocation for substantial evidence. *See Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021) (past persecution); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1123 (9th Cir. 2004) (internal relocation).  Under this standard, the BIA's findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).  "This is a 'highly deferential' standard." *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (quoting *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020)).

## III

Substantial evidence supports the BIA's finding that Singh is ineligible for asylum or withholding of removal because his alleged injuries do not rise to the level of past persecution and because he could reasonably relocate within India to avoid future persecution.

---

[1] Singh forfeited any challenge to the BIA's CAT finding by failing to raise the issue in his brief. *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996).

To be eligible for asylum and withholding of removal, Singh must show that he is a refugee—someone "who is unable or unwilling to return to the country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *S. Singh v. Garland*, 57 F.4th 643, 652 (9th Cir. 2023) (cleaned up); 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). If an individual establishes past persecution, he is "presumed to have a well-founded fear of [future] persecution," but "[e]ither past persecution or a well-founded fear of future persecution provides eligibility for a discretionary grant of asylum." *A. Singh v. Garland*, 97 F.4th 597, 603 (9th Cir. 2024) (quoting *Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir. 1998)).

## A

### 1

Substantial evidence supports the BIA's determination that the "cumulative effect" of Singh's past harms does not rise to the level of persecution. *See Gormley v. Ashcroft*, 364 F.3d 1172, 1176–77 (9th Cir. 2004) (cleaned up). To establish past persecution, Singh must show that "(1) his treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010) (citing *Chand v. INS*, 222 F.3d 1066, 1073 (9th Cir. 2000)).

"Persecution is an extreme concept that means something considerably more than discrimination or harassment." *Sharma*, 9 F.4th at 1060 (cleaned up). "[S]ome circumstances that cause petitioners physical

discomfort or loss of liberty do not qualify as persecution, despite the fact that such conditions have caused the petitioners some harm." *Id.* (cleaned up). Simply put, "not all negative treatment equates with persecution." *Lanza v. Ashcroft*, 389 F.3d 917, 934 (9th Cir. 2004). While Singh may have been offended and harmed, those harms did not constitute persecution.

Singh's alleged harms include the April 2014 threat, the June 2014 and February 2015 assaults, and the one-night detention in February 2015. None of these incidents, viewed individually or cumulatively, rises to the level of persecution.

The April 2014 threat, unaccompanied by any physical violence, was not persecution. The threat itself—leave the Mann party or "otherwise the consequences will be bad"— was not a "specific" or "menacing" statement placing Singh in imminent fear of harm. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (cleaned up). Though Singh may have been intimidated, "[m]ere threats, without more, do not necessarily compel a finding of past persecution." *Villegas Sanchez v. Garland*, 990 F.3d 1173, 1179 (9th Cir. 2021); *see also Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) ("Threats themselves are sometimes hollow and, while uniformly unpleasant, often do not effect significant actual suffering or harm.").

Neither do the two assaults compel a past-persecution finding. On both occasions, Singh was beaten for one to two minutes but reported only swelling and received only minor treatments. *Cf. Salaam v. INS*, 229 F.3d 1234, 1236 (9th Cir. 2000) (per curiam) (successful petitioner "was held incommunicado for several days," "tortured by flogging," and bore "scars from [the] beatings"). This minor treatment

provides substantial evidence that Singh did not suffer "significant physical violence" to support past persecution. *See Sharma*, 9 F.4th at 1061 (cleaned up) ("serious injuries" are a relevant consideration). Beatings without serious injuries do not compel a finding of past persecution. *See Wakkary v. Holder*, 558 F.3d 1049, 1059–60 (9th Cir. 2009). Although these two assaults caused Singh some harm, even viewed cumulatively, they are not so serious that "any reasonable adjudicator would be compelled to conclude" that they constituted persecution. *See Zehatye*, 453 F.3d at 1185 (cleaned up).

The one-night detention following the second assault does not change the equation. "We have recognized that, in some circumstances, detentions combined with physical attacks which occur on account of a protected ground can establish persecution." *Gu v. Gonzales*, 454 F.3d 1014, 1019 (9th Cir. 2006). Singh, however, was detained for a single night and sustained no physical injuries. *See Al-Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir. 2001) (no past persecution where petitioner was detained for five or six days and "was not beaten, tortured, or threatened"); *see also Sharma*, 9 F.4th at 1062 ("We [have] similarly denied petitions when the periods of detention, even if frequent, were 'short,' or 'brief,' and the petitioner sustained no injuries." (citations omitted)). Singh's allegations are like those in *Prasad v. I.N.S.*, where a "brief detention"—even accompanied by a physical assault—did not compel a finding of past persecution. 47 F.3d 336, 339 (9th Cir. 1995). Singh's case does not warrant a different conclusion.

2

Singh contends that the BIA erred by ignoring factors from related cases. He relies mostly on *A. Singh*, where we compared the facts to five factors:

> (1) he was forced to flee his home after being repeatedly assaulted; (2) one of those incidents involved a death threat; (3) he was between the ages of 16 and 18 when the attacks occurred; (4) his brother also experienced this violence; and (5) we have already recognized that Mann Party members have faced persistent threats in the region of India where [the petitioner] was twice attacked.

97 F.4th at 603–04 (quoting *S. Singh*, 57 F.4th at 653) (cleaned up). While these factors may be relevant to cases involving Mann party members, the BIA's failure to analyze them is not reversible error. First, the BIA was not required to use these factors as a special rule for all Mann party Sikhs from Punjab. *See Sharma*, 9 F.4th at 1061. Second, significant material differences exist between this case and both *S. Singh* and *A. Singh*.

First, the *S. Singh* factors do not make up a "special rule" that applies to all Mann party Sikhs. Reviewing applications for asylum is not subject to a set formula because it is a fact-dependent exercise that naturally varies with each applicant's individual circumstances. The Supreme Court warned against "set[ting] forth a detailed description of how" a particular legal standard should be applied. *INS v. Cardoza-Francesca*, 480 U.S. 421, 448 (1987). And the Court has rejected our per se and special rules for reviewing

various immigration decisions. *Ming Dai*, 593 U.S. at 359, 365 (striking down our "special rule" that "a court must take as true an asylum applicant's testimony that supports a claim for asylum" (cleaned up)); *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (rejecting our per se rule that guerilla conscription efforts "necessarily constitute[] persecution" (cleaned up)).

Requiring the BIA to strictly apply the five *S. Singh* factors would constitute a unique binding rule for Mann Sikhs from Punjab, the same type of "special rule" that the Supreme Court has rejected. But we did not create a "special rule" out of the *S. Singh* factors, and we do not require the BIA to apply them. In *A. Singh*, we used the factors as a tool—not as a binding test—to "compar[e] the facts . . . with those of similar cases" because the two cases had "strikingly similar" circumstances. 97 F.4th at 603–04. Therefore, the *S. Singh* factors do not guide our review of the BIA's decision. Rather, we defer to the BIA's conclusions unless the record would compel a reasonable adjudicator to conclude otherwise. This record does not compel us to reverse the BIA's findings.

Second, this case is distinguishable from other cases where we have found past persecution for Mann party Sikhs from Punjab. *See A. Singh*, 97 F.4th at 603; *S. Singh*, 57 F.4th at 653. Therefore, even if the BIA had applied the factors as a binding test, the evidence still would not compel reversal. Unlike the "strikingly similar" circumstances in *A. Singh* and *S. Singh*, Petitioner lived with his in-laws after only one assault, did not receive death threats, was not a minor when the attacks occurred, and did not allege that his family faced any harm from BJP members. The facts that compelled us to reverse the BIA's decision in *S. Singh* are not present here. In *A. Singh*, by contrast, "[f]our of those

five factors support[ed] a finding of past persecution." 97 F.4th at 603. Without more, we decline to pull out similar facts in cases where we reversed the BIA and ignore similar facts in cases where we upheld the BIA's conclusion. Substantial evidence supports the BIA's conclusion.

## B

Substantial evidence also supports the BIA's conclusion that Singh does not have a well-founded fear of future persecution. Because Singh has not established past persecution, he is not entitled to a presumption of a well-founded fear of future persecution. *See A. Singh*, 97 F.4th at 603. Even if he had, the government could successfully rebut the presumption by showing that Singh can "avoid future persecution by relocating" within India and that "it would be reasonable to expect [him] to do so." *Id.* at 606 (alteration in original) (quoting *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1089 (9th Cir. 2005)).

Substantial evidence supports the BIA's finding that Singh could reasonably relocate. As the BIA explained, Singh avoided persecution by relocating to live with his in-laws for six months after the first assault. So there is a specific area within India, only 35 to 40 kilometers away, "where he has no well-founded fear of persecution and where it is reasonable to relocate." *See Singh v. Whitaker*, 914 F.3d 654, 661 (9th Cir. 2019) (instructing the BIA to determine whether there are "one or more general or specific areas . . . where [the petitioner] has no well-founded fear"). Plus, the Law Library of Congress report—also addressed in the BIA's decision—recognizes that "[t]here appear to be no legal obstacles for members of the Sikh faith to relocate to other areas of India." That is especially true for low-level

Mann party members who, like Singh, are not "hard-core militants."

Together, Singh's successful relocation, the Law Library of Congress report, and the lack of relevant precedent provide substantial evidence confirming the BIA's finding that relocating within India would allow Singh to avoid persecution and that it is reasonable to expect him to do so.

IV

Substantial evidence supports the BIA's conclusion that Singh did not suffer past persecution in India and that he could safely relocate.

**DENIED.**

VANDYKE, Circuit Judge, concurring:

Applying the deferential substantial-evidence standard that the law requires us to apply, the panel opinion correctly denies Baljit Singh's petition for review. I'm happy to join that opinion in full. I write separately to highlight the growing inconsistency with which our court has handled cases involving similar facts and issues. Our court's derogation from the "basic principle of justice" that "like cases should be decided alike"—not to mention the fundamentals of immigration law and the especially appropriate deference to executive-branch decisions in this particular area of the law mandated by Congress—warrants a course correction. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005); *see also Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) ("Nothing in the INA contemplates

anything like the embellishment the Ninth Circuit has adopted.").

Start with the issue of past persecution. Right out of the gate, a panel can find binding precedent to support applying the substantial-evidence standard *or* a de novo standard of review to the agency's conclusion about whether a petitioner's harms rose to the level of past persecution. *Compare, e.g.*, *Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021) (applying the substantial-evidence standard) *with Kaur v. Wilkinson*, 986 F.3d 1216, 1221 (9th Cir. 2021) (applying de novo review). Sure, the Supreme Court will rectify *that* inconsistency this term. *See Urias-Orellana v. Garland*, 121 F.4th 327 (1st Cir. 2024), *cert granted*, 2025 WL 1787712 (U.S. June 30, 2025) (No. 24-777). But merely clarifying that the substantial-evidence standard governs won't solve the problem on its own. "The Ninth Circuit's caselaw is a bit of a 'choose-your-own-adventure' when it comes to what constitutes 'persecution' under immigration law." *Kumar v. Garland*, No. 23-308, 2025 WL 238850, at *6 (9th Cir. Jan. 17, 2025) (Bumatay, J., dissenting). Even considering *only* the decisions that have purportedly "applied the substantial-evidence standard," any panel of our court that is eager to overturn the BIA's lack-of-past-persecution finding can usually find more than enough recent precedent to justify its desired outcome. *Compare, e.g.*, *Flores Molina v. Garland*, 37 F.4th 626, 634 (9th Cir. 2022) (finding that the record compelled a finding of past persecution because, among other reasons, the petitioner "was forced to flee three separate times after being personally targeted for his political views with violence and threatened with death"); *S. Singh v. Garland*, 57 F.4th 643, 654 (9th Cir. 2023) (finding that the record compelled a finding of past persecution where the petitioner "was the

victim of a verbal confrontation and two physical attacks, one of which involved a death threat"); *A. Singh v. Garland*, 97 F.4th 597, 604 n.2 (9th Cir. 2024) (noting that "death threats alone can constitute persecution" (quoting *Canales-Vargas v. Gonzales*, 441 F.3d 739, 743 (9th Cir. 2006))) *with Sharma*, 9 F.4th at 1063–64 (finding that substantial evidence supported the agency's determination of a *lack of* past persecution where the petitioner received "threatening phone calls over a period of years" and was beaten, slapped, blindfolded, bound, and detained); *see also Kumar*, 2025 WL 238850, at *7 (Bumatay, J., dissenting) (collecting cases where panels of our court found that evidence of death threats and physical harm did *not* compel a finding of past persecution).  Compounding the inconsistency (and artificially tipping the scales in favor of *not* deferring to the agency) is that "decisions from our court that properly defer to the agency are usually resolved in unpublished dispositions with no precedential value," while our court seems to favor publishing opinions that reverse the agency.  *Flores Molina*, 37 F.4th at 648 (VanDyke, J., dissenting)

By faithfully applying the substantial-evidence standard, our panel here gets it right.  Whether certain incidents rise to the level of past persecution is an "inherently imprecise and difficult factual inquir[y]."  *Id.* at 643.  It is "anything but self-evident and could be answered with a range of reasonable views"—"[t]here is no one objective answer to the question[] of whether a petitioner has suffered real past 'persecution,' …."  *Id.*  It is an inherently "fact-bound endeavor."  *Sharma*, 9 F.4th at 1061.  And questions of fact are to be reviewed with deference.  *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

Next, consider the internal-relocation issue. Our court is no stranger to petitions for review of BIA decisions involving Mann party members from Punjab. You'd think that that would make our jurisprudence both coherent and consistent, but our caselaw is anything but. In support of its conclusion, our panel's opinion properly points to multiple pieces of evidence that the BIA relied on in determining that Singh could safely and reasonably relocate, including the Law Library of Congress Report and past evidence of relocation. Our panel's conclusion and analysis here thus comport with our precedents in *A. Singh v. Garland* and *N. Singh v. Whitaker*, both of which granted petitions for review based on the idea that similar reports from the Law Library of Congress were insufficient to show that internal relocation would have been reasonable. *See A. Singh*, 97 F.4th at 608–09; *N. Singh v. Whitaker*, 914 F.3d 654, 660–61 (9th Cir. 2019). But I continue to believe that *A. Singh* was wrongly decided and that the *A. Singh* and *N. Singh* panels were more concerned with second-guessing the agency and picking nits than with applying the deferential substantial-evidence standard. *See A. Singh*, 97 F.4th at 610–22 (VanDyke, J., dissenting). As I noted in my *A. Singh* dissent, the reports at issue in those cases (and the one in this one) "directly address[] the feasibility of relocation for Sikhs and Mann party members," and "our court has repeatedly relied on precisely this same evidence in reviewing and affirming agency decisions." *Id.* at 619–20 (VanDyke, J., dissenting). Once again, though, because it should be obvious that this evidence, when properly considered, substantiates the agency's internal-relocation findings under the deferential standard, most of the decisions that have reached the *correct*

result have done so via unpublished decisions. *See id.* at 620 (collecting cases); *see also* Ninth Cir. R. 36-2 (describing the criteria for publication).

Our court has let these problems exacerbate for years, and we seem too preoccupied with other perceived crises to fix the resulting self-imposed chaos on our own. Our mess has rendered a great disservice to the immigration courts, which are constantly trying to keep up with our whims (but keep having their conclusions overturned because supposedly "no reasonable adjudicator" could have reached them) and, more importantly, to the parties in these cases (for whom, let's be honest, the outcome of a petition often hinges solely on which judges are drawn for the panel). It's probably time for the Supreme Court to give us another little course correction, as it has to do with some regularity, and once again direct us to defer to the BIA not just in word but also in deed.