**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BALJIT SINGH, | No. 24-815 |
| *Petitioner*, | Agency No. A208-180-861 |
| v. | AMENDED OPINION |
| TODD BLANCHE, Acting Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 20, 2025[*]
Pasadena, California

Filed December 1, 2025
Amended May 15, 2026

Before: Ryan D. Nelson and Lawrence VanDyke, Circuit
Judges. [**]

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] This opinion was originally issued by a unanimous panel that included
Judge Sandra S. Ikuta. Following Judge Ikuta's death, this amended

Opinion by Judge R. Nelson;
Concurrence by Judge VanDyke

**SUMMARY**[***]

## Immigration

In an amended opinion, the panel denied Baljit Singh's petition for review of the Board of Immigration Appeals' decision affirming the denial of asylum and related relief, concluding that substantial evidence supported the BIA's determination that Singh's past incidents did not rise to the level of past persecution and that he could avoid future persecution by relocating within India.

In *Urias-Orellana v. Bondi*, 146 S. Ct. 845 (2026), the Supreme Court unanimously held that the substantial evidence standard applies to the agency's conclusion that a given set of undisputed facts does not constitute persecution. The panel explained that this standard applies to the entirety of the agency's conclusions—both the underlying factual findings and the application of the Immigration and Nationality Act to those findings. In so holding, the Supreme Court abrogated this court's contrary holdings, and to the extent there was intra-circuit tension on this issue, there no longer is. Likewise, the court reviews the BIA's findings on internal relocation for substantial

---

opinion is issued by a quorum of the panel. *See* 28 U.S.C. § 46(d); Ninth Circuit General Order 3.2(h).

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

evidence, a highly deferential standard under which the BIA's findings are conclusive unless a reasonable adjudicator would be compelled to conclude the contrary. Substantial evidence is more than a mere scintilla, but means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

The panel held that the incidents Singh experienced, including a vague threat by unknown individuals, two apparently unrelated physical assaults by unknown individuals without serious injuries, and a brief police detention, over an eleven-month period, did not compel a finding of past persecution. The panel wrote that the connection between the incidents was tenuous and noted that the court has declined to reverse the agency's conclusion on past persecution in cases with similar levels of cumulative harm. Although a reasonable factfinder could have found the incidents sufficient to establish past persecution, a factfinder would not be compelled to do so.

The panel rejected Singh's contention that the agency erred by ignoring factors from related precedent involving harm to Mann political party members in the Punjab. The BIA was not required to use these factors as a special rule for all Mann party Sikhs from Punjab and there were significant material differences between Singh's case and those cases.

The panel also held that substantial evidence supported the BIA's finding that Singh failed to meet his burden to show that he could not reasonably relocate to avoid future persecution. The agency identified country conditions evidence suggesting that there is at least one area within India where Singh has no well-founded fear of persecution

and where it is reasonable to relocate. It considered a Law Library of Congress report that recognized that there did not appear to be any legal obstacles for members of the Sikh faith to relocate to other areas of India, especially low-level Mann party members who, like Singh, are not hard-core militants. A reasonable adjudicator could find this adequate to support a conclusion that relocating within India would allow Singh to avoid persecution and that it is reasonable for him to do so. The evidence did not compel a contrary result.

Concurring, Judge VanDyke wrote separately to emphasize the importance of applying the especially appropriate deference to executive-branch decisions in this particular area of the law mandated by Congress. But, for at least two reasons, *Urias Orellana* alone likely won't make much of a difference in the Ninth Circuit. Even considering only the decisions that have purportedly applied the substantial evidence standard, any panel of the court that is eager to overturn the BIA's lack of past persecution finding can usually find more than enough recent precedent to justify its desired outcome. Second and relatedly, "substantial evidence" doesn't always mean the same thing to the unanimous Supreme Court as it means to this court. To genuinely apply the substantial evidence standard as Congress and the Supreme Court have defined it is to ask one question: could "any reasonable adjudicator … have found as the agency did"? That's a low bar for the agency to clear. The fact that even our court's own jurisprudence can't come up with a consistent answer proves the point. For that reason, a court-of-appeals decision overturning a lack-of-past-persecution finding should be an exceedingly rare breed.

## COUNSEL

Garish Sarin, Law Offices of Garish Sarin, Los Angeles, California, for Petitioner.

Zachary S. Hughbanks and Andrew B. Insenga, Trial Attorneys; Patrick J. Glen and Matthew B. George, Senior Litigation Counsel; Melissa Neiman-Kelting, Assistant Director; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Brett A. Shumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

R. NELSON, Circuit Judge:

Baljit Singh petitions for review of a Board of Immigration Appeals (BIA) decision affirming the denial of asylum, withholding of removal, and protection under the Convention Against Torture.  Singh alleges that he suffered past persecution in India for his Sikh faith and membership in the Mann party.  Because substantial evidence supports the BIA's conclusion that Singh's alleged harm did not rise to the level of past persecution and that he could avoid future persecution by relocating within India, we deny the petition.

I

A

Baljit Singh, a native citizen of Punjab, India, is a practicing Sikh and member of a political group called the Shiromani Akali Dal (Mann) party.  After entering the United States, Singh applied for asylum, withholding of removal, and CAT protection.  Singh said he faced danger from two political groups, the Akali Dal Badal party and the Bharatiya Janata party (BJP).  Both oppose the Mann party.  Singh described three incidents that he argues constitute past persecution.

First, Singh testified that he was threatened in April 2014.  Several masked men confronted him after a Mann party event and warned him to leave the Mann party, "otherwise the consequences [would] be bad."

Second, Singh alleged that he was attacked in June 2014 after putting up political posters.  Several men approached Singh, threatening him because he had not left the Mann

party. The men assaulted Singh with wooden sticks for one to two minutes, rendering him unconscious. Singh received a hot compress, an injection, and some oral medication at the local hospital where he was treated (for three days) for swelling and some "accumulated" blood. Singh's injuries consisted of swelling on the back of his head and lower back and "some kind of blood coagulating" in his stomach area. Singh had no visible injuries when he reported the assault to local police shortly after being released from the hospital. The police "refused to take the report" and told him that they would "lock [him] up" if he returned to file another complaint.

After this incident, Singh did not work for the Mann party for six months. He instead went with his wife and children to stay with his in-laws, who lived just over 20 miles from Singh's home. Although an unidentified person went to Singh's father's home "one or two times" to ask where he was, Singh had no problems during his stay with his in-laws.

Third, Singh alleged that after he returned home, he was attacked in February 2015 by six people who threatened him for not leaving the Mann party. Again, he was assaulted with wooden sticks for about two minutes. Singh had swelling on his forehead and unspecified injuries to his shoulders and knees, which a doctor treated with a hot compress and IV pain medication.

Singh also reported this assault to the same police station, but they rebuffed him again. The police detained Singh for one night and told him to leave the Mann party, but they did not physically harm him.

The government submitted a 2018 report from the Law Library of Congress, stating that "[t]here appear to be no legal obstacles for members of the Sikh faith to relocate to

other areas of India."  The report also addressed membership in the Mann party and concluded that "internal relocation is feasible" when the person is "not of interest to central authorities," and that "[o]nly hard-core militants appear to be of interest to central Indian authorities."  Simply holding Mann party views "would not make someone a high-profile militant."

B

The immigration judge (IJ) denied Singh's applications. The IJ found that Singh testified credibly but concluded that he failed to show that the three incidents rose to the level of past persecution or that he could not internally relocate.  The IJ therefore denied Singh's applications and ordered him removed to India.

The BIA affirmed and dismissed the appeal.  On past persecution, the BIA agreed with the IJ that Singh's "past harm—threats and two very brief beatings by a group of BJP members requiring some medical treatment, and a single night's detention—does not rise to the level of persecution." Thus, the BIA concluded that Singh was not entitled to a rebuttable presumption of a well-founded fear of future harm.

On internal relocation, the BIA concurred with the IJ's assessment that Singh could reasonably relocate within India to avoid future persecution.  The BIA noted, among other things, that the Law Library of Congress report flagged "no obstacles" to relocation for Mann party members; that there is no evidence low-level Mann party members are singled out for mistreatment; and that it was unlikely the BJP would have the means to track Singh throughout India.  The BIA concluded that internal relocation was reasonable.

The BIA also affirmed the IJ's denial of CAT protection, concluding that Singh failed to meaningfully challenge the IJ's findings.[1]  This petition followed.

## II

Where, as here, "the BIA conducts its own review of the evidence and law, rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020) (cleaned up).

We review the BIA's findings on past persecution for substantial evidence. *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 848 (2026); *Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021).  The Supreme Court unanimously held in *Urias-Orellana* that the Immigration and Nationality Act (INA) "requires application of the substantial-evidence standard to the agency's conclusion that a given set of undisputed facts does not constitute persecution." 146 S. Ct. at 848.  And that standard applies to "the entirety of the agency's conclusions—both the underlying factual findings and the application of the INA to those findings." *Id.* at 851. In so holding, the Court abrogated this court's holdings to the contrary. *See, e.g.*, *Kaur v. Wilkinson*, 986 F.3d 1216, 1221 (9th Cir. 2021).  To the extent there was intra-circuit tension on this issue, *see, e.g.*, *Lapadat v. Bondi*, 145 F.4th 942, 951–52 (9th Cir. 2025), there no longer is.

We likewise review the BIA's findings on internal relocation for substantial evidence. *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1123 (9th Cir. 2004).  Under the substantial-

---

[1] Singh forfeited any challenge to the BIA's CAT finding by failing to raise the issue in his brief. *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996).

evidence standard, the BIA's findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Urias-Orellana*, 146 S. Ct. at 850 (quoting 8 U.S.C. § 1252(b)(4)(B)); *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006). "This is a 'highly deferential' standard." *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (quoting *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020)). Substantial evidence is "more than a mere scintilla, but means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Urias-Orellana*, 146 S. Ct. at 850 (cleaned up).

## III

Substantial evidence supports the BIA's finding that Singh is ineligible for asylum or withholding of removal because the alleged incidents do not rise to the level of past persecution and because he could reasonably relocate within India to avoid future persecution.

To be eligible for asylum and withholding of removal, Singh must show that he is a refugee—someone "who is unable or unwilling to return to the country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *S. Singh v. Garland*, 57 F.4th 643, 652 (9th Cir. 2023) (cleaned up); 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). If an individual establishes past persecution, he is "presumed to have a well-founded fear of [future] persecution," but "[e]ither past persecution or a well-founded fear of future persecution provides eligibility for a discretionary grant of asylum." *A. Singh v. Garland*, 97 F.4th 597, 603 (9th Cir. 2024) (quoting *Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir. 1998)).

## A

### 1

Substantial evidence supports the BIA's determination that the "cumulative effect" of Singh's past harms does not rise to the level of persecution. *See Gormley v. Ashcroft*, 364 F.3d 1172, 1176–77 (9th Cir. 2004) (cleaned up). To establish past persecution, Singh must show that "(1) his treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010) (citing *Chand v. INS*, 222 F.3d 1066, 1073 (9th Cir. 2000)).

"Persecution is an extreme concept that means something considerably more than discrimination or harassment." *Sharma*, 9 F.4th at 1060 (cleaned up). "[S]ome circumstances that cause petitioners physical discomfort or loss of liberty do not qualify as persecution, despite the fact that such conditions have caused the petitioners some harm." *Id.* (cleaned up). Determining whether the record *compels* a conclusion of past persecution "is heavily fact-dependent" and "not reducible to a set formula." *Id.* at 1061 (cleaned up). Simply put, "not all negative treatment equates with persecution." *Lanza v. Ashcroft*, 389 F.3d 917, 934 (9th Cir. 2004). While Singh was harmed, we cannot say that "any reasonable adjudicator would be compelled to conclude" that those harms rise to the level of persecution. *See Urias-Orellana*, 146 S. Ct. at 850 (quoting 8 U.S.C. § 1252(b)(4)(B)).

Singh's alleged harms include the April 2014 threat, the June 2014 and February 2015 assaults, and the one-night

detention in February 2015. There is evidence "adequate to support a conclusion" that none of these incidents, viewed individually or cumulatively, rises to the level of persecution. *See id.* (cleaned up).

The first threat itself—leave the Mann party or "otherwise the consequences will be bad"—was not a "specific" or "menacing" statement placing Singh in imminent fear of harm. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (cleaned up). Though Singh may have been intimidated, "[m]ere threats, without more, do not necessarily compel a finding of past persecution." *Villegas Sanchez v. Garland*, 990 F.3d 1173, 1179 (9th Cir. 2021); *see also Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) ("Threats themselves are sometimes hollow and, while uniformly unpleasant, often do not effect significant actual suffering or harm.").

Neither do the two assaults by unknown assailants compel a past-persecution finding. Beatings without serious injuries do not compel a finding of past persecution. *See Wakkary v. Holder*, 558 F.3d 1049, 1059–60 (9th Cir. 2009). On both occasions, Singh was beaten with sticks for one to two minutes but the only lingering injury he reported from these beatings was swelling. *Cf. Salaam v. INS*, 229 F.3d 1234, 1236 (9th Cir. 2000) (per curiam) (successful petitioner "was held incommunicado for several days," "tortured by flogging," and bore "scars from [the] beatings").

Although we are concerned that Singh was knocked unconscious in the first assault, Singh apparently suffered no concussions, skull fractures, lacerations, or traumatic brain injuries. He reported only "swelling" and stated that he had no visible injuries. The beatings Singh suffered were

reprehensible. But they were not serious enough to compel us to reverse the agency's conclusion as we have in other cases. *See Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir. 2018) (holding it "clear" petitioner suffered persecution where he was kidnapped, tied up, and beaten unconscious by guerillas who had repeatedly invaded his home and murdered several family members and neighbors); *Gafoor v. INS*, 231 F.3d 645, 649–50 (9th Cir. 2000) (holding it "clear" petitioner suffered persecution where armed "[s]oldiers assaulted him in front of his family," held him captive in a cell and beat him for a week, and then later "beat him with their rifles" on the street until he was "bleeding and unconscious," resulting in a nine-day hospital stay), *superseded by statute on other grounds as recognized in Parussimova v. Mukasey*, 555 F.3d 734, 739–40 (9th Cir. 2009).

The treatments Singh required provide further evidence that Singh did not suffer "significant physical violence" to compel a past-persecution finding. *See Sharma*, 9 F.4th at 1061 ("serious injuries" are a "significant consideration"). To be sure, it is concerning that Singh spent three days in the hospital after the first assault. But his injuries were treatable with only a hot compress, an injection of some kind, and oral medication. Singh had no visible injuries after leaving the hospital. After the second assault, Singh likewise received outpatient treatments in the form of a hot compress and IV medication, and was left only with "a little bit of swelling." "What is relevant to the persecution question is not whether [Singh] went to a hospital, but whether his injuries were severe enough to merit treatment." *Chanchavac v. INS*, 207 F.3d 584, 589 n.4 (9th Cir. 2000). At bottom, while the two assaults on Singh are troubling, they are not so serious that "any reasonable adjudicator would be compelled to

conclude" that they constituted persecution. *See Urias-Orellana*, 146 S. Ct. at 851; *Zehatye*, 453 F.3d at 1185.

The one-night detention following the second assault does not change the equation. "We have recognized that, in some circumstances, detentions combined with physical attacks which occur on account of a protected ground can establish persecution." *Gu v. Gonzales*, 454 F.3d 1014, 1019 (9th Cir. 2006). But the "length and quality of a petitioner's detention" is the "relevant consideration." *Sharma*, 9 F.4th at 1062. Singh was detained for a single night and was not physically harmed. *See Al-Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir. 2001) (no past persecution where petitioner was detained for five or six days and "was not beaten, tortured, or threatened"); *Gu*, 454 F.3d at 1017–18 (9th Cir. 2006) (no past persecution where police detained petitioner for three days and "hit his back with a rod approximately ten times," leaving "red marks"); *Sharma*, 9 F.4th at 1062 ("We [have] similarly denied petitions when the periods of detention, even if frequent, were 'short,' or 'brief,' and the petitioner sustained no injuries." (citations omitted)). Singh's allegations are like those in *Prasad v. INS*, where a "brief detention"—even accompanied by a physical assault—did not compel a finding of past persecution. 47 F.3d 336, 339 (9th Cir. 1995). Singh's case does not compel a different conclusion.

Even when individual harms are not enough to compel a finding of persecution, they may become so when assessed cumulatively. *Sharma*, 9 F.4th at 1061 ("[T]he key question is whether, looking at the cumulative effect of all the incidents that a Petitioner has suffered, the treatment he received rises to the level of persecution." (citation omitted)). Not so here. One vague threat by unknown

people, two apparently unrelated assaults by unknown people, and a brief detention by police over an eleven-month period do not compel us to reverse the BIA.

The connection between these incidents is tenuous. It is possible that the April 2014 threat and the June 2014 assault were related. But it is unlikely that the four individuals who assaulted Singh in June 2014 were among the six individuals who assaulted Singh in February 2015 because Singh did not recognize any of his alleged attackers in the second attack, despite them being unmasked and mere feet away when speaking to him, and despite the fact that the attackers in the first attack were unmasked as well. There is no evidence that they were from the same political party. And there is no evidence to compel the conclusion that Singh's alleged attackers wore uniforms or were linked to military or police forces. So it is even harder to say that Singh's brief detention by police was related to the assaults. And the assaults on Singh are more like the "isolated" and "sporadic incidents" of crime that we have held to not resemble persecution. *Id.* at 1061–62 (citations omitted).

We have declined to reverse the agency's conclusion on past persecution in cases with similar levels of cumulative harm. *See, e.g.*, *Gu*, 454 F.3d at 1017–18, 1020–21 (upholding agency's conclusion where petitioner was detained by police for three days, interrogated, and beaten with a rod, leaving "temporary red marks" but no permanent injuries); *Prasad*, 47 F.3d at 339–40 (upholding agency's conclusion where petitioner was taken from his car by a group of soldiers and civilians, detained and interrogated in a police station for several hours, and "hit on his stomach and kicked from behind"); *Lanza*, 389 F.3d at 920–21, 934 (upholding agency's conclusion where petitioner was blacklisted by government, lost her job, and suffered a

nighttime home invasion by paramilitary members who punched her and threatened to kill her and her young daughter). Singh's alleged treatment was reprehensible. But even if we might consider Singh's cumulative harms sufficient to constitute persecution on de novo review, "[w]e are not permitted to substitute our view of the matter for that of the [BIA]." *Prasad*, 47 F.3d at 340. Likewise, that another IJ might decide the other way in a different case on similar facts, does not make the decision unsupported by such "evidence as a reasonable mind might accept as adequate." *Urias-Orellana*, 146 S. Ct. at 850. "Although a reasonable factfinder *could* have found th[ese] incident[s] sufficient to establish past persecution, we do not believe that a factfinder would be compelled to do so." *Prasad*, 47 F.3d at 340.

## 2

Singh contends that the BIA erred by ignoring factors from related cases. He relies mostly on *A. Singh*, where we compared the facts to five factors:

> (1) he was forced to flee his home after being repeatedly assaulted; (2) one of those incidents involved a death threat; (3) he was between the ages of 16 and 18 when the attacks occurred; (4) his brother also experienced this violence; and (5) we have already recognized that Mann Party members have faced persistent threats in the region of India where [the petitioner] was twice attacked.

97 F.4th at 603–04 (quoting *S. Singh*, 57 F.4th at 653) (cleaned up). While these factors may be relevant to cases

involving Mann party members, the BIA's failure to analyze them is not reversible error. First, the BIA was not required to use these factors as a special rule for all Mann party Sikhs from Punjab. *See Sharma*, 9 F.4th at 1061. Second, significant material differences exist between this case and both *S. Singh* and *A. Singh*.

First, the *S. Singh* factors do not make up a "special rule" that applies to all Mann party Sikhs. Reviewing applications for asylum is not subject to a set formula because it is a fact-dependent exercise that naturally varies with each applicant's individual circumstances. The Supreme Court warned against "set[ting] forth a detailed description of how" a particular legal standard should be applied. *INS v. Cardoza-Francesca*, 480 U.S. 421, 448 (1987). And the Court has rejected our per se and special rules for reviewing various immigration decisions. *Ming Dai*, 593 U.S. at 359, 365 (striking down our "special rule" that "a court must take as true an asylum applicant's testimony that supports a claim for asylum" (cleaned up)); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (rejecting our per se rule that guerilla conscription efforts "necessarily constitute[] persecution" (cleaned up)).

Requiring the BIA to strictly apply the five *S. Singh* factors would constitute a unique binding rule for Mann Sikhs from Punjab, the same type of "special rule" that the Supreme Court has rejected. But we did not create a "special rule" out of the *S. Singh* factors, and we do not require the BIA to apply them. In *A. Singh*, we used the factors as a tool—not as a binding test—to "compar[e] the facts . . . with those of similar cases" because the two cases had "strikingly similar" circumstances. 97 F.4th at 603–04. Therefore, the *S. Singh* factors do not guide our review of the BIA's decision. Rather, we defer to the BIA's conclusions unless

the record would compel a reasonable adjudicator to conclude otherwise. This record does not compel us to reverse the BIA's findings.

Second, this case is distinguishable from other cases where we have found past persecution for Mann party Sikhs from Punjab. *See A. Singh*, 97 F.4th at 603; *S. Singh*, 57 F.4th at 653. Therefore, even if the BIA had applied the factors as a binding test, the evidence still would not compel reversal. Unlike the "strikingly similar" circumstances in *A. Singh* and *S. Singh*, Petitioner lived with his in-laws after only one assault, did not receive death threats, was not a minor when the attacks occurred, and did not allege that his family faced any harm from BJP members. The facts that compelled us to reverse the BIA's decision in *S. Singh* are not present here. In *A. Singh*, by contrast, "[f]our of those five factors support[ed] a finding of past persecution." 97 F.4th at 603. Without more, we decline to pull out similar facts in cases when we reversed the BIA and ignore similar facts in cases when we upheld the BIA's conclusion. Substantial evidence supports the BIA's conclusion.

## B

Substantial evidence also supports the BIA's conclusion that Singh does not have a well-founded fear of future persecution. Because Singh has not established past persecution—or that his persecutors are a government or "government-sponsored"—he is not entitled to a presumption of a well-founded fear of future persecution. *See A. Singh*, 97 F.4th at 603; 8 C.F.R. § 1208.13(b)(3). Even if he had, the government still could successfully rebut the presumption by showing that Singh can "avoid future persecution by relocating" within India and that "it would be reasonable to expect [him] to do so." *A. Singh*, 97 F.4th at

606 (alteration in original) (quoting *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1089 (9th Cir. 2005)). But since Singh is not entitled to the presumption, he bears the burden to show that internal relocation would not be reasonable. *See* 8 C.F.R. § 1208.13(b)(1)(i)(B), (3). Singh fails to meet his burden.

Substantial evidence supports the BIA's finding that Singh could reasonably relocate. The agency identified country conditions evidence suggesting that there is at least one area within India "where [Singh] has no well-founded fear of persecution and where it is reasonable to relocate." *See Singh v. Whitaker*, 914 F.3d 654, 661 (9th Cir. 2019) (instructing the BIA to determine whether there are "one or more general or specific areas . . . where [the petitioner] has no well-founded fear"). The Law Library of Congress report—addressed in the BIA's decision—recognizes that "[t]here appear to be no legal obstacles for members of the Sikh faith to relocate to other areas of India." That is especially true for low-level Mann party members who, like Singh, are not "hard-core militants." A "reasonable adjudicator" could find the Law Library of Congress report and the other factors listed by the BIA "adequate to support a conclusion" that relocating within India would allow Singh to avoid persecution and that it is reasonable for him to do so. *Urias-Orellana*, 146 S. Ct. at 850. We are not "compelled to conclude to the contrary." *Id*.

## IV

Under the highly deferential substantial-evidence standard, we cannot disturb the BIA's conclusions that Singh did not suffer past persecution in India and that he could safely relocate.

**DENIED.**

VANDYKE, Circuit Judge, concurring:

The panel opinion correctly denies Baljit Singh's petition for review. I'm happy to join that opinion in full. I write separately to emphasize the importance of applying the especially appropriate deference to executive-branch decisions in this particular area of the law mandated by Congress.

Start with the issue of past persecution. As our panel opinion explains, the unanimous Supreme Court has spoken: the substantial-evidence standard "applies to 'the entirety of the agency's conclusions—both the underlying factual findings and the application of the INA to those findings.'" Amended Panel Op. 9 (quoting *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 851 (2026)). But, for at least two reasons, *Urias-Orellana* alone likely won't make much of a difference here in the Ninth Circuit.

First, our jurisprudence remains rife with inconsistency. "The Ninth Circuit's caselaw is a bit of a 'choose-your-own-adventure' when it comes to what constitutes 'persecution' under immigration law." *Kumar v. Garland*, No. 23-308, 2025 WL 238850, at *6 (9th Cir. Jan. 17, 2025) (Bumatay, J., dissenting). Even considering *only* the decisions that have purportedly "applied the substantial-evidence standard," any panel of our court that is eager to overturn the BIA's lack-of-past-persecution finding can usually find more than enough recent precedent to justify its desired outcome. *Compare, e.g.*, *Flores Molina v. Garland*, 37 F.4th 626, 634 (9th Cir. 2022) (finding that the record compelled a finding of past persecution because, among other reasons, the petitioner "was forced to flee three separate times after being personally targeted for his political views with violence and threatened with death"), *and S.*

*Singh v. Garland*, 57 F.4th 643, 654 (9th Cir. 2023) (finding that the record compelled a finding of past persecution where the petitioner "was the victim of a verbal confrontation and two physical attacks, one of which involved a death threat"), *and A. Singh v. Garland*, 97 F.4th 597, 604 n.2 (9th Cir. 2024) (noting that "death threats alone can constitute persecution" (quoting *Canales-Vargas v. Gonzales*, 441 F.3d 739, 743 (9th Cir. 2006))) *with Sharma v. Garland*, 9 F.4th 1052, 1063–64 (9th Cir. 2021) (finding that substantial evidence supported the agency's determination of a *lack of* past persecution where the petitioner received "threatening phone calls over a period of years" and was beaten, slapped, blindfolded, bound, and detained), *and Kumar*, 2025 WL 238850, at *7 (Bumatay, J., dissenting) (collecting cases where panels of our court found that evidence of death threats and physical harm did *not* compel a finding of past persecution). Compounding the inconsistency (and artificially tipping the scales against deferring to the agency) is the fact that "decisions from our court that properly defer to the agency are usually resolved in unpublished dispositions with no precedential value," while our court seems to favor publishing opinions that reverse the agency. *Flores Molina*, 37 F.4th at 648 (VanDyke, J., dissenting).

Second and relatedly, as we should know by now, "substantial evidence" doesn't always mean the same thing to the unanimous Supreme Court as it means to our court. *See, e.g.*, *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) ("Nothing in the INA contemplates anything like the embellishment the Ninth Circuit has adopted."). To *genuinely* apply the substantial-evidence standard as Congress and the Supreme Court have defined it is to ask one question: could "*any* reasonable adjudicator … have found as the agency did"? *Id.* at 368; *see also* 8 U.S.C.

§ 1252(b)(4)(B).  For a wide variety of immigration issues subject to that standard of review, that's a low bar for the agency to clear.  And on the issue of whether certain incidents rise to the level of past persecution, it's even lower.  Imagine asking every "reasonable adjudicator" on earth whether one threat plus two assaults causing minor injuries plus a one-night detention rises to the level of "persecution."  Unless every single one of them answers "yes," then we should not disturb the agency's finding.  Of course, "[t]here is no one objective answer to the question[] of whether a petitioner has suffered real past 'persecution.'"  *Flores Molina*, 37 F.4th at 643 (VanDyke, J., dissenting).  The fact that even our own jurisprudence can't come up with a consistent answer proves the point.  For that reason, a court-of-appeals decision overturning a lack-of-past-persecution finding should be an exceedingly rare breed.  But until it achieves that status in our court, two cheers for the Supreme Court's clarification in *Urias-Orellana*.

Next, consider the internal-relocation issue.  Our court is no stranger to petitions for review of BIA decisions involving Mann party members from Punjab.[1]  You'd think

---

[1] Purely as an aside, I'll note that several of Singh's allegations bear a striking resemblance to allegations that other Indian nationals have made in their attempts to obtain asylum.  *See, e.g.*, *J. Singh v. Garland*, 118 F.4th 1150, 1177–78 (9th Cir. 2024) (N.R. Smith, J., dissenting) (describing asylum applications filed by "low-level workers" of the Mann Party, who alleged, among other things, that they "were hanging posters for their political party's event," were "approached by an opposing party," were demanded to leave the Mann party, suffered exactly two physical attacks, "went to a doctor after the first attack and received medical treatment for their injuries," "went to the police," who "refused to file complaints" and threatened the applicants with detention, and, after suffering a second attack "with wooden sticks, hockey sticks,

that that would make our jurisprudence both coherent and consistent, but our caselaw is anything but. In support of its conclusion, our panel's opinion properly points to the Law Library of Congress Report, which the BIA relied on in determining that Singh could reasonably relocate. Our panel's conclusion and analysis here comport with our precedents in *A. Singh v. Garland* and *N. Singh v. Whitaker*, both of which granted petitions for review based on the idea that similar reports from the Law Library of Congress were insufficient to show that internal relocation would have been reasonable. *See A. Singh*, 97 F.4th at 608–09; *N. Singh v. Whitaker*, 914 F.3d 654, 660–61 (9th Cir. 2019).[2] But I continue to believe that *A. Singh* was wrongly decided and

_____

or baseball bats," sought medical attention again before coming to the United States); *see also G. Singh v. Bondi*, 130 F.4th 1142, 1146–48 (9th Cir. 2025). One need only perform a cursory Westlaw search to find scores, if not hundreds, of similar cases. The agency didn't make an adverse-credibility determination here, and, as our panel opinion explains, even if we assume (as the agency did) that Singh's allegations are true, we must uphold the agency's denial of relief. But our precedent has made it unreasonably difficult for the agency to make adverse-credibility determinations based on the uncontroversial proposition that the striking similarity is probably not a coincidence. *See J. Singh*, 118 F.4th at 1173–80 (N.R. Smith, J., dissenting); *G. Singh*, 130 F.4th at 1156–58 (Bress, J., concurring). Our court's gullibility has hamstrung the agency's ability to weed out fraudulent asylum claims, and this reality is yet another reason why deferring to the agency—which is much better situated to make these credibility determinations than we are—is so critical. *See Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010).

[2] As our panel opinion explains, Singh here "bears the burden to show that internal relocation would not be reasonable." Amended Panel Op. 19. That distinguishes this case from *A. Singh* and *N. Singh*, where the burden was on the government. *See A. Singh*, 97 F.4th at 607; *N. Singh*, 914 F.3d at 659.

that the *A. Singh* and *N. Singh* panels were more concerned with second-guessing the agency and picking nits than with applying the deferential substantial-evidence standard.  *See A. Singh*, 97 F.4th at 610–22 (VanDyke, J., dissenting).  As I noted in my *A. Singh* dissent, the reports at issue in those cases (and the one in this one) "directly address[] the feasibility of relocation for Sikhs and Mann party members," and "our court has repeatedly relied on precisely this same evidence in reviewing and affirming agency decisions." *Id.* at 619–20 (VanDyke, J., dissenting) (citing cases).  Once again, though, because it should be obvious that this evidence, when properly considered, substantiates the agency's internal-relocation findings under the deferential standard, most of the decisions that have reached the *correct* result have done so via unpublished decisions.  *See id.* at 620 (collecting cases); *see also* Ninth Cir. R. 36-2 (describing the criteria for publication).

Our far-too-frequent failure to defer to the BIA has rendered a great disservice to the immigration courts, which are constantly trying to keep up with our whims (but keep having their conclusions overturned because supposedly "no reasonable adjudicator" could have reached them) and, more importantly, to the parties in these cases (for whom, let's be honest, the outcome of a petition often hinges solely on which judges are drawn for the panel).  For their sake and our own, let's try harder to defer to the BIA not just in word but also in deed.